**FEDERAL KEMPER INSURANCE COMPANY, Movant,**

v.

**James HORNBACK and Mabel Hornback, Respondents.**

Supreme Court of Kentucky.

June 12, 1986.

Armer H. Mahan, Jr., Louisville, for movant.

David L. Van Zant, Huddleston & Van Zant, Elizabethtown, for respondents.

STEPHENSON, Justice.

The trial court entered judgment against Federal Kemper Insurance Company, imposing punitive damages for bad faith refusal to settle a fire loss with its policyholder. The Court of Appeals affirmed. We granted discretionary review and reverse.

The Hornbacks' fire insurance policy with Federal Kemper was raised from $6,000 to $30,000. Thirty-five days later, the house burned. The evidence clearly showed that the fire was set. As stated by the Court of Appeals, there was little evidence that the Hornbacks set the fire. However, there was clearly a jury issue presented which was resolved by the jury in favor of the Hornbacks. There was a verdict on the terms of the policy and a verdict for punitive damages.

Federal Kemper appealed only the judgment for punitive damages.

We reverse the decision of the Court of Appeals but, in so doing, do not fault either the trial court or the Court of Appeals panel.

The case was tried and affirmed on appeal according to *Feathers v. State Farm Fire & Casualty Company*, Ky.App., 667 S.W.2d 693 (1983).

*Feathers* involved the fire loss of a house and contents. The insurance company refused to pay on the proof of loss on the ground that it contained misrepresentations. The court opined that the home-

owner's fire policy is unique and that if the allegations of the complaint are true, the breach of contract is so great as to constitute tortious conduct. *Feathers* then held:

> ... Nevertheless, once the policyholder has substantially complied with the terms and conditions required by the policy, and there is no substantial or credible evidence that the policyholder directly or indirectly set fire to his property for personal gain, then at that point, the insurance company becomes akin to a fiduciary as to the sums that may be owed under the policy. So the proceeds of the policy may not be withheld unless there is a substantial breach of the contract by the policyholder. Whether or not State Farm was justified in withholding and denying the payment of the losses will be resolved by trial. We simply say that if State Farm was not justified in its actions, then its conduct was tortious against the policyholder for which consequential and punitive damages may be presented to the fact finder.

*Feathers* arrived at this conclusion by recognizing the traditional principle of law in this Commonwealth that one may not recover consequential or punitive damages for breach of contract, citing a line of cases beginning with *Cumberland Telephone and Telegraph Co. v. Cartwright Creek Telephone Company*, 108 S.W. 875 (1908), and ending with *General Accident Fire & Life Assurance Corp. v. Judd*, Ky., 400 S.W.2d 685 (1966).

■ *Feathers* then went on to state that for the purpose of establishing a definite principle of law, these and similar authorities are flawed for the reason that they contain such modifiers as *ordinarily*. *Cumberland* stated unequivocally that punitive damages are not recoverable for a mere breach of contract. *Judd* gratuitously added *ordinarily* when it relied upon and cited *Cumberland*. We do not regard *Judd* as in any way diminishing the rule denying punitive damages in contract cases.

*Feathers* established a new tort action in this Commonwealth by reasoning that the insurance company became a *fiduciary* by breach of a covenant to act in good faith.

This new tort is apparently based on *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973).

In that opinion, it is stated that California recognizes a cause of action in tort against the insurance company for breach of an implied covenant of good faith and fair dealing. This case drew an analogy of the fiduciary relationship created in third-party cases involving automobile accidents, whether there was good faith on the part of the insurer to settle within policy limits so as to protect the insured against a judgment in excess of the policy limits. The opinion allows recovery for *mental distress*, not punitive damages. We do not draw such an analogy in this Commonwealth so as to convert an action for breach of contract into a tort action.

■ The only fiduciary relationship we recognize attaching to insurance policies is the excess-of-the-policy-limits cases where good faith is required on the part of the insurance company. *Manchester Ins. & Indem. Co. v. Grundy*, Ky., 531 S.W.2d 493 (1975), and similar cases cited therein, recognize these principles. This principle of law is contract and not tort and has no application to insurance contracts generally. Above all, there is no suggestion that punitive damages would follow breach.

The theory expressed in *Grundy* is that of *protection* of the policyholder against a larger judgment than the policy limits. There is no protection of the policyholder involved in *Feathers*. The insurance company has an obligation to pay money according to the terms of the contract. Failure or refusal to pay will give rise to a suit for breach of contract.

■ We are of the opinion that *Feathers* is not, and should not be, the rule in this Commonwealth and, to the extent that we are able, overrule it. Sanctions for a frivolous defense, as provided for by our rules, are deemed sufficient to deter insurance companies from refusing to pay according to the terms of the contract without cause.

The decision of the Court of Appeals is reversed with directions that the claim for punitive damages be dismissed.

GANT, VANCE, and WHITE, JJ., concur.

VANCE, J., files a separate concurring opinion.

LEIBSON, J., dissents and files a separate dissenting opinion in which STEPHENS, C.J., and WINTERSHEIMER, J., join.

VANCE, Justice, concurring.

I concur with the majority opinion. We should not extend the scope of punitive damages to allow their recovery for breach of contract.

The purpose of compensatory damages is to make the claimant whole and to allow him to recover all of the actual damage he has sustained. In cases where punitive damages are allowed, they constitute a windfall to an already fully compensated claimant.

Punitive damages represent a sum over and above the amount a claimant is entitled to receive as compensation for a loss suffered by him. In theory, they are allowed as a punishment of a defendant for outrageous conduct or to deter such conduct in the future.

While the theory of punishing the grossest and most outrageous conduct so as to deter such conduct in the future has some intrinsic merit, the allowance of punitive damages has at least three severe faults. First, there is no adequate standard for the assessment of such damages; secondly, since punitive damages are allowed as a punishment to deter future conduct, they are in the nature of a fine and should redound to the benefit of the state treasury rather than constitute a windfall recovery to a claimant who has already recovered all of his actual loss by means of compensatory damages; and thirdly, and perhaps most important of all, punitive damages in most cases have little deterrent effect because Kentucky law allows insurance coverage to protect against punitive damages. *Continental Insurance Companies v. Hancock,* Ky., 507 S.W.2d 146 (1974). Thus, most often, it is not the wrongdoer who is punished; instead, the punishment is spread among a myriad of policyholders who must, in the long run, bear the cost.

In the past, Kentucky has allowed the recovery of punitive damages for tortious conduct, but not for breach of contract. If any change is called for in the law related to punitive damages, it should reflect some limitation rather than an enlargement of the scope of recovery.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

With admirable candor, able counsel for the movant/insurer admitted at oral argument that in cases of recent vintage "without exception" every jurisdiction called upon to decide this question has recognized the principle that, given proper circumstances, an insured may pursue a tort claim against his own insurer for bad faith failure to pay first party benefits due and owing under the policy. The question before the court is not whether such a tort claim exists, but rather when will the facts justify an award of punitive damages and, more particularly, does the evidence in the present case justify such an award? The Majority Opinion goes beyond the questions presented.

Movant's brief cites us to several cases bearing upon the resolution of an appropriate legal standard for deciding when punitive damages may be recovered in cases such as the present one. In *McLaughlin v. Alabama Farm Bureau Mut. Cas.,* 437 So.2d 86, 90 (Ala.1983), the court stated: "In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute."

Movant cites *Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 271 N.W.2d 368 (1978), in which the Wisconsin court stated that an insured must prove three elements in order to prevail against an insurance company for alleged refusal in bad faith to

pay the insured's claim: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed. Subsequently, in *Davis v. Allstate Ins. Co.*, 101 Wis.2d 1, 303 N.W.2d 596 (1981), the Wisconsin court amplified this rule, stating an insurer is, however, entitled to challenge a claim and litigate it if the claim is debatable on the law or the facts.

These guidelines as presented by the movant are a fair statement of the law. This amounts to the same standard for imposing punitive damages described by the Kentucky Court of Appeals in *Feathers v. State Farm Fire and Casualty Co.*, Ky.App., 667 S.W.2d 693 (1983). *Feathers* stated that the insurance company may be liable for punitive damages where it denies payment after "the policyholder has substantially complied with the terms and conditions required by the policy, and there is no substantial or credible evidence that the policyholder directly or indirectly set fire to his property for personal gain...." 667 S.W.2d at 696.

The thrust of the present appeal has not been at the nature of the law, but at the nature of the evidence. The movant points to certain elements of the evidence, and to certain inferences and conclusions based on such elements, which movant maintains mandate a directed verdict on whether there was any "substantial or credible" evidence to refuse to pay the claim.

However, the facts, inferences and conclusions summarized in the trial court's "Opinion, Order and Supplemental Judgment," show that there was sufficient evidence that the insurer's refusal to pay was arbitrary, unreasonable and in reckless disregard for the insured's rights, i.e., willful and malicious, so as to justify an award of punitive damages, and the jury so found. The question is whether the trial record, taken as a whole, supports the trial court's conclusions.

The question is the sufficiency of the evidence. The trial court elected to bifurcate the trial, trying first the insured's claim for breach of the insurance contract. It was only in the second stage that the insured/respondents were called upon to present proof in support of their claim of bad faith and for punitive damages.

In the first stage of the case, trial of the contract claim, the trial court had overruled the insured's motion for a directed verdict and submitted the issue of the insurer's liability to the jury. The trial court stated that it did so despite the lack of evidence from the insurance company in defense of the claim, for two reasons: (1) because there was evidence that the fire was caused by arson (although no evidence the insureds were responsible), and (2) because collecting on the claim could provide an alleged motive. The majority opinion is *mistaken* when it states there was *"little* evidence that the Hornbacks set the fire." (Emphasis added.) In fact, there was *no* evidence that the Hornbacks set the fire. The majority opinion is mistaken when it states "there was *clearly* a jury issue." (Emphasis added.) On the contrary, the evidence was probably *insufficient* to create a jury issue. The insureds were probably entitled to a directed verdict, but the trial court submitted the case to the jury from an abundance of caution, and said as much on the record.

The movant/insurer insists that if there was a jury issue on the contract claim, it must follow that there was substantial and credible evidence to deny the claim and, therefore, it was entitled to insist on its "day in court" with no penalty. If the *only* evidence presented on the issue of bad faith were the evidence presented before the contract claim was submitted to the jury, this might be true. cf. *Waites v. S.C. Windstorm & Hail Underwriting*, 279 S.C. 362, 307 S.E.2d 223 (1983); *Fortson v. Cotton States Mut. Ins. Co.*, 168 Ga.App. 155, 308 S.E.2d 382 (1983). However, in the present case the trial was bi-

furcated. The question as to whether there was a submittable issue regarding bad faith and the right to punitive damages then depended on the state of the evidence at the conclusion of *all* the evidence, which includes part two of the trial, not just part one.

The evidence then included, among other things: (1) proof that the respondents/insureds had no access to the property at the time the fire was presumably set; (2) that their property had been properly and appropriately appraised as required by the insurance company at the time the insurance was obtained; (3) that their property was reappraised after the fire by the insurance company utilizing a procedure suggesting bad faith; (4) that the insureds had been mistakenly identified by the insurance company as the same persons who had been involved in a previous arson at another location; and (5) that the insurance company then turned a deaf ear to overwhelming proof to the contrary showing no involvement with the prior arson.

The holding in *Feathers v. State Farm Fire & Cas. Co., supra,* was that the insured must prove that there was no "substantial or credible evidence" upon which to deny the claim. This means that the "plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute." *McLaughlin v. Ala. Farm Bureau Mut. Cas.,* 437 So.2d 86, 90 (Ala.1983). But this means there are cases where there may be enough evidence to satisfy the technical requirements for jury submission, but there is other proof which, if believed, proves that this was not a "credible" defense. *Feathers, supra.* We need not decide whether insureds/respondents were entitled to a directed verdict on the contract claim. This point is not at issue on this appeal. However, assuming they were not so entitled, this hypothesis is not dispositive of the bad faith/punitive damages issues in the particular circumstances of this case.

The essence of the question as to whether the dispute is merely contractual or whether there are tortious elements justifying an award of punitive damages depends first on whether there is proof of bad faith and next whether the proof is sufficient for the jury to conclude that there was "conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Restatement (Second) Torts,* Sec. 909(2) (1979), as quoted and applied in *Horton v. Union Light, Heat & Power Co.,* Ky., 690 S.W.2d 382, 388–90 (1985). Then punitive damages are justified. There are recent cases from other jurisdictions involving facts similar to the present, i.e., some evidence of arson or of a substantial financial benefit to the insured, but also other evidence of bad faith in investigating or settling the claim that outweigh it, where punitive damages were awarded. For example, see *Chavers v. National Sec. Fire & Cas. Co.,* 405 So.2d 1 (Ala.1981) and *McCorkle v. Great Atlantic Ins. Co.,* 637 P.2d 583 (Okla.1981).

*Davis v. Allstate Ins. Co., supra,* cited in movant's brief, upheld liability for punitive damages even though there was evidence to dispute the accuracy of the insured's policy claim both in respect to value and ownership of the property in question because there was other evidence to indicate that the refusal to pay was not in good faith.

Our rule should be that ordinarily, if the evidence presents a factual issue with respect to the validity of the insured's contract claim, this establishes the legitimacy of the insurance company's denial thereof and the tort claim for punitive damages should not be submitted to the jury. But this rule should not be inflexible. It may not be applicable because the trial court decided erroneously that there was sufficient evidence to dispute the contract claim. It may not be applicable because there is other evidence refuting the credibility of the insurer's claim of a defense. Certainly, in present circumstances where the trial court used a bifurcated trial procedure, the evidence must be judged at the conclusion of all the evidence, and not limited to the

state of the evidence at the conclusion of the contract phase.

A bifurcated procedure was the proper way to try the present case. This procedure better protected the rights of the insurance company/movant because it kept out of the contract phase evidence which was relevant to the issue of bad faith but unnecessary and possibly prejudicial to the insurance company in the trial of the preliminary question of liability under the insurance contract. But the trial court's decision to utilize this bifurcated procedure, a procedure adopted to protect the rights of the insurance company, should not then become a vehicle that forecloses consideration of the evidence subsequently presented on the issue of bad faith and punitive damages. This case should be judged by the state of the evidence at the conclusion of the whole case. The evidence, taken as a whole, supports the trial court's decision to submit the issue of punitive damages to the jury and the jury's verdict. The trial court's instruction setting out the basis for an award of punitive damages appropriately pointed out the additional findings necessary before making an award of punitive damages.

The majority opinion makes a "shell game" (now you see it, now you don't) out of the fiduciary relationship between the insurance carrier and its insured, a relationship which we have recognized since at least 1957. *American Surety Co. of N.Y. v. J.F. Schneider & Son*, Ky., 307 S.W.2d 192 (1957). The Majority Opinion recognizes that a fiduciary relationship exists when the question is should the carrier be required to pay the judgment in excess of the policy limits recovered by a third party against its insured assuming the insurer's refusal to pay was in bad faith. But, we will not recognize the same fiduciary relationship where the bad faith refusal to pay involves a first party claim. Our decision to "overrule" *Feathers v. State Farm, supra,* places us in a minority position squarely in conflict with every other state that has considered the matter. What is more, whether we should overrule *Feath-*

*ers* was a question that was not even presented on this appeal!

The decision of the Court of Appeals, which affirmed the verdict and judgment in the trial court, should be affirmed.

STEPHENS, C.J. and WINTERSHEIMER, J., join in this dissent.