**FIRST NATIONAL BANK OF LOUISVILLE**

v.

**Loretta LUSTIG, et al.**

**Civ. A. Nos. 87–5488, 88–1682.**

United States District Court, E.D. Louisiana.

Sept. 14, 1993.

---

Patrick M. Ardis and Elizabeth A. McNeill, Wolff Ardis, Memphis, TN and William E. Brown, and Barry W. Ashe, Stone, Pigman, Walther, Wittman & Hutchinson, New Orleans, LA, for plaintiff.

Larry L. Simms, Gibson, Dunn & Crutcher, Washington, DC, John J. Swenson, Michael P. McNamara, Mary Lee Wegner, Gibson, Dunn & Crutcher, Los Angeles, CA, and Frederick F. Bott, Matt J. Farley, Allen F. Campbell, Ellis B. Murov, and Duris L. Holmes, Deutsch, Kerrigan & Stiles, New Orleans, LA, for The Aetna Cas. and Sur. Co. and Federal Ins. Co.

## ORDER AND REASONS

MENTZ, District Judge.

Defendants Aetna Casualty and Surety Company ("Aetna") and Federal Insurance Company ("Federal") (collectively referred to as "Sureties") ask the court to grant summary judgment on plaintiff's Kentucky common law bad faith claim and rule on two constitutional claims. Having considered the briefs, the record, and the applicable law, the court denies the summary judgment motion and finds the constitutional claims meritless for the reasons that follow.

## I.  BACKGROUND

The Sureties issued First National Bank of Louisville ("FNBL") a standard form Blanket Bond to cover fraudulent and dishonest acts of its employees for losses discovered from July 1, 1985 to July 1, 1986. FNBL gave the Sureties notice of a possible claim on April 2, 1986, relating to loans worked on by defendant Kevin Dewitt, an FNBL loan officer. The Sureties denied liability under the bond. FNBL brought this suit against the Sureties for their (1) refusal to pay the bond claim and (2) improper handling of the claim.

### Arguments

FNBL makes both statutory [1] and common law claims of bad faith against the Sureties. The Sureties ask the court to dismiss the common law claim on summary judgment because FNBL cannot establish the essential elements of a common law bad faith cause of action under Kentucky law. They make two arguments after conceding that coverage under the policy is an issue for the jury at trial.

First, they argue that FNBL cannot show that the Sureties lacked a reasonable basis on which to dispute coverage. Specifically, the Sureties had a reasonable basis to maintain (1) that DeWitt's guilty pleas fail to establish that he acted with manifest intent to harm FNBL; (2) that DeWitt did not act with the requisite manifest intent to obtain financial benefit for himself or others; (3) that FNBL's loan losses did not result directly from DeWitt's acts; and (4) that prior discovery of DeWitt's dishonesty by FNBL terminated coverage under the bond. Second, the Sureties argue that FNBL cannot establish that the Sureties knew or recklessly

---

1.  The statutory claims are not the subject of this motion and the court, accordingly, does not reach the merits of those claims.

disregarded the absence of any reasonable basis on which to dispute coverage.

FNBL responds, first, that it can succeed on its mishandling claim without establishing a duty to pay. Second, it argues that substantial evidence exists of the Sureties' conscious wrongdoing or recklessness to defeat summary judgment on the common law bad faith claim. Specifically, FNBL cites the following evidence: (1) that the Sureties performed no work on the claim for more than one year after FNBL gave notice; (2) that the Sureties performed a superficial investigation[2]; (3) that the Sureties manufactured defenses and asserted invalid defenses[3]; (4) that the Sureties engaged in bad faith settlement discussions by offering between twenty-two and twenty-seven cents on the dollar for the claim; (5) that the Sureties' representatives lied to FNBL representatives; (6) that attorneys acted improperly in purchasing one of the FNBL funded construction projects at issue in this case; and (7) that the Sureties "attacked" FNBL and its employees to avoid or delay payment of this claim.

## II. LAW AND ANALYSIS

### A. Applicable Law

Kentucky law applies through application of the *Erie* doctrine that provides that a federal court, sitting in diversity, applies substantive state law. *Erie R.R. v. Tompkins,* 304 U.S. 64, 77, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Federal courts look to final decisions of the highest state court. When the state's highest court has not ruled, the federal court must predict how that highest state court would decide. *Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.,* 953 F.2d 985, 988 (5th Cir.1992) (citing *Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967)); *Monette v. AM–7–7 Baking Co.,* 929 F.2d 276, 280 (6th Cir.1991).

### B. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When a moving party satisfies the requisites of Rule 56(c), a motion for summary judgment should be granted. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The inferences drawn from the underlying facts, however, must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). Finally, the court notes that the substantive law determines materiality of facts, and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To survive a motion for summary in a bad faith action, plaintiff must come forward with evidence, sufficient to defeat a directed verdict at trial, that reveals some act of conscious wrongdoing or recklessness by the insurer. *Matt v. Liberty Mut. Ins. Co.,* 798 F.Supp. 429, 434 (W.D.Ky.1991) *aff'd,* 968 F.2d 1215 (6th Cir.1992). The court now turns to the merits of the arguments with these standards in mind.

### C. Bad Faith

█ In recent years, the Kentucky courts have struggled with the common law tort of bad faith.[4] From the flurry of cases comes

---

2. Dep. of Sonia Morton, April 23, 1992, at 316–18.

3. Dep. of Sonia Morton, April 23, 1992, at 277–78.

4. In *Feathers v. State Farm Fire & Cas. Co.,* 667 S.W.2d 693, 696 (Ky.Ct.App.1983), the Kentucky Court of Appeals recognized a tort action for bad faith breach of a first party insurance contract.

In *Federal Kemper Ins. Co. v. Hornback,* 711 S.W.2d 844, 845 (Ky.1986), the Kentucky Supreme Court overruled *Feathers* and criticized the California case law upon which the *Feathers* decision relied. Three years later in *Curry v. Fireman's Fund Ins. Co.,* 784 S.W.2d 176, 177–78 (Ky.1989), the Kentucky Supreme Court overruled *Federal Kemper,* establishing *Feathers* and

the current rule that this common law tort action may be maintained when an insurance company acts in bad faith in dealing with its own insured. *Curry v. Fireman's Fund Ins. Co.*, 784 S.W.2d 176, 178 (Ky.1989). The Kentucky Supreme Court reasoned that such an action is justifiable because without it, the peace of mind that insurance buys is illusory. *Curry*, 784 S.W.2d 178. The court in *Curry* did not expound on its newly adopted cause of action but expressly adopted the dissent in *Federal Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844, 846–49 (Ky.1986) (Leibson, J., dissenting), in which Justice Leibson borrowed from Wisconsin jurisprudence a three-part test for bad faith. Under this test, an insured must prove the following elements to prevail against an insurance company for alleged bad faith refusal to pay the insured's claim: (1) the insurer must be obligated to pay the claim under policy terms; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) the insurer must have either known that no reasonable basis existed for denying the claim or have acted with reckless disregard for whether such a basis existed. *Federal Kemper*, 711 S.W.2d at 846–47 (citing *Anderson v. Continental Ins. Co.*, 271 N.W.2d 368 (Wis. 1978)).

The first prong of the *Federal Kemper* test explicitly provides that obligation to pay pursuant to the policy is a prerequisite establishing a claim for bad faith refusal to pay. More troublesome here is that part of the test as applied to the FNBL's mishandling claim. The court finds no Kentucky or Sixth Circuit rule that specifically addresses whether coverage is an essential element of a bad faith action for mishandling of a claim such as this. The court, as required by the *Erie* doctrine has searched the law of other jurisdictions in an attempt to predict how the Kentucky Supreme Court would rule on this issue. *See Monette*, 929 F.2d at 280 (federal court must ascertain rule that state's highest court would decide when that court has not addressed instant issue). The parties cite numerous cases in their voluminous memoranda in which they bicker about the applicable standard.[5] However, the cases they cite do not specifically address this issue and, at best, touch on it only by inference. *See* Steven S. Ashley, "Bad Faith Liability in the Absence of Coverage; a Response," 7 Bad Faith Law Report, No. 1 (1986) (discussing *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973)).

■ The court finds that the Kentucky rule adopted from Justice Leibson's dissent in *Federal Kemper* is the law applicable to the mishandling claim. To maintain a bad faith action for non-payment of the insured's claim, the insured must prove that the insurer is obligated to pay the claim under the terms of the policy. *Federal Kemper*, 711 S.W.2d at 846–47.[6] FNBL tries to persuade the court otherwise with a treatise advocating the maintenance of a bad faith cause of action absent coverage under the policy. Ashley, at 6–7.[7] While the court finds this an intriguing academic issue and argument,

---

the dissent in *Federal Kemper* as the law of Kentucky.

5. FNBL cites cases from the United States Court of Appeals for the Ninth Circuit that, according to Circuit rule, may not be cited to or relied upon. Rule 36–3 of the Ninth Circuit provides that such opinions shall not be regarded as precedent and shall not be cited to or by the circuit or district courts within the Ninth Circuit, either in briefs, oral argument, opinions, memoranda or orders, except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel. The court notes with great displeasure that FNBL does not notify the court of the status of these cases and cautions both FNBL and the Sureties that their conduct should remain beyond reproach and without even the slightest taint of impropriety.

6. The court is mindful of the arguments against this rule. Specifically, that FNBL's bad faith action, as a claims handling case, is more than a mere bad faith claim for refusal to pay. Indeed, FNBL goes to great lengths to show how its claim exceeds a failure to pay claim. The court, while recognizing its predicament, cannot find a statement of the law applicable to this matter and deems itself bound by Kentucky law as stated in *Federal Kemper* and *Curry*.

7. The author argues that logic dictates that a bad faith cause of action for mishandling be allowed absent coverage under the policy because paying covered claims is not the insurer's only responsibility. The author argues that the insurer must also act fairly and in good faith in discharging contractual responsibilities, which includes things other than mere paying of covered claims. Ashley, at 7.

it cannot base a finding of law on such an amorphous and indeterminate legal conclusion supported by mere inferences the author deducts from a 1973 California case. FNBL asks the court to take a gargantuan leap to find as a matter of law that coverage under the policy is unnecessary to maintain this bad faith claim for mishandling. While this theory may become the law in the future, it is not grounded in current law and the court, accordingly, cannot justify its adoption.

To dismiss FNBL's claim on summary judgment the court would have to find, first, that the insurer was not obligated to pay the claim under the policy terms, which here translates to no coverage under the bond. That issue will be determined by the jury in the first phase of trial. *See First Nat. Bank of Louisville v. Lustig*, 961 F.2d 1162, 1163 (5th Cir.1992), *reh'g den., clarified* (holding that genuine issues of material fact exist as to bond coverage). Because the first part of the three-part *Federal Kemper* conjunctive test cannot be decided now, the court need analyze this matter no further. The court, accordingly, cannot grant summary judgment on FNBL's common law bad faith claim for either failure to pay or mishandling the claim.

■ The court, in an abundance of caution, addresses the second prong of the *Federal Kemper* test. It requires plaintiff to prove that the insurer lacked a reasonable basis in law or fact for denying the claim and allows the insurer to litigate a claim that is debatable on the law or facts. *Federal Kemper*, 711 S.W.2d at 847. In establishing Kentucky law on this issue, Justice Leibson endorsed not only Wisconsin's general rule, but it expanded version as stated *Davis v. Allstate Ins. Co.*, 101 Wis.2d 1, 303 N.W.2d 596 (1981) (allowing an insurer to challenge and litigate claim if claim is debatable on law or facts). *Federal Kemper*, 711 S.W.2d at 847. In his dissent, Justice Leibson wrote:

Our rule should be that ordinarily, if the evidence presents a factual issue with respect to the validity of the insured's contract claim, this establishes the legitimacy of the insurance company's denial thereof and the tort claim for punitive damages should not be submitted to the jury.

*Federal Kemper*, 711 S.W.2d at 848.

Following the lead of the Wisconsin court, Justice Leibson found that the rule should be flexible. He identified two instances in which it could be inapplicable. First, the rule may be inapplicable because the trial court erroneously decided that sufficient evidence existed to dispute the contract claim. Second, he wrote that it may not be applicable when "there is other evidence refuting the credibility of the insurer's claim of a defense." *Federal Kemper*, 711 S.W.2d at 848. The Sureties contend that FNBL cannot establish this prong of the test. FNBL, in response, produces more than thirty items of evidence to refute the credibility of the Sureties' defenses.[8] The court finds that a genuine issue of material fact exists regarding whether the Sureties had a reasonable basis for denying the claim. *See Federal Kemper*, 711 S.W.2d at 848.[9]

### D. Constitutional Claims

#### 1. Access to Courts

■ The Sureties contend that allowing FNBL to proceed on its common law bad faith claim would violate their right of access to the courts. They argue that the possibility of compensatory and punitive damages would punish them for choosing to defend themselves and would deter them and others from exercising their right of access in the future. The Sureties contend that (1) they have an undisputed constitutional right to have legitimate disputes over issues of law or fact adjudicated by a court; (2) the Fifth Circuit has held that the Sureties' position on

---

**8.** App. 1, FNBL's Mem. in Opp. Some of those include: false credit references by Dewitt; false information on contractors, appraisers, etc.; misrepresentations to loan committees on all eight loans at issue; fraudulent construction contracts; forgeries; unauthorized letters of credit; and, fake invoices.

**9.** The court does not reach the merits of the third prong of the *Federal Kemper* test because the Sureties have not proven that they are entitled to summary judgment under either of the first two prongs. Because the three-part *Federal Kemper* test is a conjunctive one, it is unnecessary to address the third prong.

several crucial points of law were reasonable and correct and that there remain legitimate disputes regarding FNBL's claims that must be determined by a jury; and (3) imposition of bad faith liability for the exercise of the sureties' right of access to the courts punishes them. The court finds these arguments without merit.

The Sureties cite case law explaining that the right of access to the courts is protected by the First Amendment[10] and is among the most precious of liberties.[11] The court does not doubt these facts. FNBL argues in response that the Sureties are asking the court to either ignore the widespread judicial acceptance of punitive damages and bad faith torts or declare all bad faith actions unconstitutional.

The United States Supreme Court refuses to declare punitive damages *per se* unconstitutional. *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 17–18, 111 S.Ct. 1032, 1043, 113 L.Ed.2d 1 (1991). The Court recognizes that punitive damages may be unconstitutional in certain cases depending on the facts of each case. *Haslip,* 499 U.S. at 17–18, 111 S.Ct. at 1043. Here, no punitive damages have been imposed and the court, accordingly, has no basis on which to speak to their constitutionality.

In the context of access to the courts, the court finds that the possible imposition of punitive damages does not affect access in this instance. Right of access issues outside of the prison context must be based on a "nuanced interpretation" of the requirement that access is "adequate, effective and meaningful." *Crowder v. Sinyard,* 884 F.2d 804, 812 (5th Cir.1989), *cert. denied,* 496 U.S. 924, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990). Here, the parties have been litigating the instant claim since 1987. Thus, "access" to the court can not seriously be controverted.

As the Fifth Circuit stated in *Crowder,* right of access to the courts is a facilitative one that is designed to ensure that citizens have the opportunity to exercise legal rights in court. *Crowder,* 884 F.2d at 814. Litigants are guaranteed neither the right to have their cases proceed in a particular procedural posture nor the right to particular forms of relief. *Id.* FNBL's bad faith claim is governed by Kentucky law, the application of which the parties continue to debate *ad nauseam.* The possible imposition of punitive damages through the Kentucky bad faith action does not impose punishment on the Sureties for defending FNBL's claim against them.[12] The Sureties have not been prevented from defending the claim, which the court notes they have done vigorously. Considering all the indicia as required by *Crowder,* the court cannot find that the Sureties have been denied access to the courts.

### 2. Due Process

■ The Sureties ask the court to dismiss FNBL's claim because it violates due process. The Sureties argue that applying the Kentucky rule established in a 1989 case is tantamount to an *ex post facto* punishment, the punishment being the possibility of punitive damages. The court finds this argument meritless.

The Sureties argue that at the time of the conduct at issue, the Kentucky Supreme Court did not recognize a claim for bad faith failure to pay a claim. FNBL first gave notice of a possible claim on April 2, 1986, which was within the July 1, 1985 to July 1, 1986 policy period. On April 2, 1986, and during the entire policy period the Kentucky Supreme Court recognized a common law tort action for bad faith refusal to pay.[13] *Feathers,* 667 S.W.2d at 696.[14] Although Kentucky did not recognize the cause of ac-

---

**10.** *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972).

**11.** *United Mine Workers v. Illinois State Bar Ass'n,* 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967).

**12.** The mere possibility of punitive damages is not tantamount to their imposition. Indeed,

FNBL would be required to meet certain established burdens of proof before punitive damages could be assessed against the Sureties if they were found liable.

**13.** *Supra* note 5.

**14.** *Feathers* was the law of Kentucky from August 5, 1983, until the Kentucky Supreme Court overruled it with *Federal Kemper* on June 12, 1986.

tion from 1986–1989, the court finds that applying that reinstated rule to this case is not a retroactive application of the law. As Justice Souter wrote for the United States Supreme Court in *James B. Beam Distilling Co. v. Georgia*, —— U.S. ——, ——, 111 S.Ct. 2439, 2443, 115 L.Ed.2d 481 (1991), retroactivity is properly seen as a choice between the "principle of forward operation and that of relation backward." The relevant question becomes whether the court should apply the old or the new rule. *Beam Distilling*, —— U.S. at ——, 111 S.Ct. at 2443. Here, application of the *Beam Distilling* test produces the same result, that is, the same substantive rule. It is the interim *Federal Kemper* rule that need not be considered for retroactivity analysis because the rule to be applied is the one in effect at the time the facts of the case arose. *Beam Distilling*, —— U.S. at ——, 111 S.Ct. at 2444. Here, the facts of the case arose at least by the time FNBL made its notice of possible claim on April 2, 1986, at which time *Feathers* was the law of Kentucky. The court, accordingly, finds the Sureties' retroactivity argument meritless and finds no due process violation.

### III. CONCLUSION

The court finds that:

(1) Issues of fact to be determined by the jury preclude entry of summary judgment on the Sureties' bad faith tort claim;

(2) The Sureties' access to the courts has not been impaired; and

(3) Applying Kentucky's bad faith tort action as set forth in the *Curry* and *Kemper* decisions to this case is not an improper retroactive application of the law. Accordingly,

**IT IS ORDERED** that the Sureties' motion for summary judgment is **DENIED** and the Sureties' motion to find constitutional violations regarding access to the courts and retroactive application of law is **DENIED.**