Elson HOLLIDAY, Sr.; Elson Holliday, Jr.; and Elson Holliday Enterprises, Inc., Appellants,

v.

Elvira CAMPBELL, Appellee.

No. 92–CA–002114–MR.

Court of Appeals of Kentucky.

April 15, 1994.

William Engle, III, Barret, Haynes, May, Carter & Roark, P.S.C., Hazard, for appellants.

Debra A. Catron, Hazard, for appellee.

Before LESTER, C.J. and DYCHE and HOWERTON, JJ.

LESTER, Chief Judge.

This is an appeal from a judgment entered upon a jury verdict determining that appellants had trespassed upon appellee's land and had cut timber thereon having a reasonable market value of $1,000 and awarding her an additional sum of $15,000 punitive damages.

The parties hereto, by way of brief, extensively set forth the evidence and since it is well known to them as well as to the Court from our review of the record, we find it unnecessary to again restate it here.

■ Appellants first urge reversal based upon the trial court's refusal to grant their motion for a directed verdict. They contend that appellee failed to sustain their action for trespass because she failed to prove anyone of the prerequisites of *Marinaro v. Deskins,* Ky., 344 S.W.2d 817 (1961), in that she was unable to prove title of record from the Commonwealth or source common to both parties; title by adverse possession; or actual possession at the time of invasion of her rights. What the Hollidays contend might be true with reference to the first two elements, but there was ample conflicting evidence with its attendant conclusions to be drawn therefrom that it was properly submitted to the jury. The fact that the panel disagreed with appellants' factual scenario and chose to believe the evidence presented by Campbell does not warrant reversal.

We now turn to the matter of punitive damages. The jury awarded the landowner $15,000 as punitive compensation pursuant to KRS 411.184, *et seq.* which appellants contend is reversible error because the issue should not have been submitted to the jury in the absence of proof of oppression, fraud or malice upon their part. The Hollidays also maintain that "[t]here have been no Kentucky Appellate Court rulings which deal specifically with the new punitive damages

law" it having been enacted in 1988. This is not quite precise for several cases have made reference to this particular enactment and treated to some extent in *Huddleston By and Through Lynch v. Hughes,* Ky.App., 843 S.W.2d 901 (1992).

■ KRS 411.184 and KRS 411.186 deal with punitive damages and the assessment criteria. It is unnecessary to repeat these enactments herein for they are set forth in the briefs of the parties with the exception to point out that KRS 411.184 provides for recovery where a defendant has acted toward the plaintiff with oppression, fraud or malice. Our interpretation of the statute is that only one of these elements is required for levying of the damages. *Hughes, supra* at 905–906, relates:

> KRS 411.184, addressing punitive damages, defines "malice" as meaning:
>
> [E]ither conduct which is specifically intended by the defendant to cause tangible or intangible injury to the plaintiff or conduct that is carried out by the defendant both with a flagrant indifference to the rights of the plaintiff and with a subjective awareness that such conduct will result in human death or bodily harm.

Addressing punitive damages generally, the Supreme Court in *Horton v. The Union Light, Heat & Power Co.,* Ky., 690 S.W.2d 382, 389 (1985), cites the *Restatement (2d) of Torts* § 908(2) (1979) and makes the following observation:

> "[E]vil motive" and "reckless indifference to the rights of others" are considered as synonymous. * * * [N]eglience when gross has the same character of outrage justifying punitive damages as does willful and malicious misconduct in torts where the injury is intentionally inflicted. Just as malice need not be expressed and may be implied from outrageous conduct, so too may wanton or reckless disregard for the lives and safety of others be implied from the nature of the misconduct.

*R.B. Tyler Co. v. Kinser,* Ky., 346 S.W.2d 306, 308 (1961), holds that "malice is imputed where the wrongful act evi-

denced the entire want of care or great indifference to the consequences and the rights of others." *Black's Law Dictionary* 956–957, similarly, acknowledges that the term "malice" need not be used exclusively to characterize a deliberate intent to do harm:

> Malice in law is not necessarily personal hate or ill will, but it is that state of mind which is reckless of law and of the legal rights of the citizen.

*Black's* defines a "willful and malicious injury" as follows:

> For such to exist there must be an intent to commit a wrong either through actual malice or from which malice will be implied. Such an injury does not necessarily involve hatred or ill will, as a state of mind, but arises from intentional wrong committed without just cause or excuse. * * *It may involve merely a willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally.

*Id.* at 1600. (Citation omitted) (Emphasis supplied).

Following *Hughes* was *Wittmer v. Jones*, Ky., 864 S.W.2d 885 (1993), where the Court quoted from the dissent in *Federal Kemper Ins. Co. v. Hornback*, Ky., 711 S.W.2d 844, 848 (1986), at 890 of *Wittmer*, to the effect:

> "The essence of the question as to whether the dispute is merely contractual or whether there are tortious elements justifying an award of punitive damages depends first on whether there is proof of bad faith and next whether the proof is sufficient for the jury to conclude that there was 'conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.' *Restatement (Second) Torts*, Sec. 909(2) (1979), as quoted and applied in *Horton v. Union Light, Heat and Power Co.*, Ky., 690 S.W.2d 382, 388–90 (1985)." *Federal Kemper, supra*, 711 S.W.2d at 848.

This means there must be sufficient evidence of intentional misconduct or reckless disregard of the rights of an insured or a claimant to warrant submitting the right to award punitive damages to the jury. If there is such evidence, the jury should award consequential damages and may award punitive damages. The jury's decision as to whether to award punitive damages remains discretionary because the nature of punitive damages is such that the decision is always a matter within the jury's discretion.

Two months after *Wittmer, supra*, the Court rendered its opinion in *Hanson v. American National Bank & Trust Co.*, Ky., 865 S.W.2d 302 (1993), which dealt with the jury function regarding punitive damages at 310:

> Reasonable men and women will differ in determining the amount of exemplary damages, but so long as the jury's decision is based on competent evidence, is free of passion or prejudice, and is appropriately reviewed by the trial judge, we find no basis for substituting this Court's opinion in the place of the jury's.

and our function upon appellate review at 311:

> It is with equal caution that this Court does not substitute its opinion as to the amount of exemplary damages for that of the jury. It was the trial jury and trial judge who heard all the evidence and had the opportunity to see and hear the witnesses during the lengthy trial. The sanctity of the jury verdict is at the heart of our judicial system.

> The procedures for review of the jury verdict are stated in CR 59.01. To assist the trial court in applying the test of determining whether a verdict is given under the influence of passion and prejudice, the "first blush rule" as adopted. *Davis v. Graviss*, Ky., 672 S.W.2d 928 (1984).

There is no issue in the case at bench as to the form and content of the instructions given the jury in regard to the punitive damages.

■ Among other things, appellee proved to the jury's satisfaction that the Hollidays knew they were cutting Campbell's trees on her land; that they were so doing in a manner contrary to good logging practices; that the appellants were aware that the property line was a wire fence which they did not take

the trouble to locate, although at least some of it was in place; that the trees were topped so as to damage nearby seedlings; that they failed to maintain a logging road so as to increase the probability of increased soil erosion to Campbell's land; and that the Hollidays sold appellee's timber for $10,000 yet offered her but $1,000 after the cutting. In addition, the appellants caused additional loads of logs to be removed after Campbell told them they were trespassing. The matter of punitive damages was properly submitted to the jury.

■ In their post-trial motion for judgment notwithstanding the verdict, the appellants raised the issue of excessiveness of the damages as they do before this Court. We believe the complete answer to this contention is found in *Davis v. Graviss*, Ky., 672 S.W.2d 928 (1984):

> Our earlier opinion discussing review of the question of excessive damages in *City of Louisville v. Allen*, Ky., 385 S.W.2d 179 (1964), expresses essentially the same analysis as *Prater v. Arnett* [648 S.W.2d 82] of the different functions of trial and appellate courts. The basic guideline for appellate review is set out in the *Allen* case as follows:
>
> > "It serves to emphasize the initial and primary role of the trial judge in determining these issues; that his decision shall be *prima facie correct* and final; and that only in rare instance when it can be said that he *has clearly erred*, i.e., abused his discretion, will he be reversed." (Emphasis original.) 385 S.W.2d at 183–184.
>
> Once the issue is squarely presented to the trial judge, who heard and considered the evidence, neither we, nor will the Court of Appeals substitute our judgment on excessiveness for his unless clearly erroneous.
>
> In short, the rules governing appellate practice do not direct the appellate judge to decide if the verdict shocks his conscience or causes him to blush. Those rules charge us with the responsibility to review the record and decide whether, when viewed from a standpoint "most favorable" to the prevailing party, there is evidence to support the verdict and judgment. *Rogers v. Kasdan*, Ky., 612 S.W.2d 133 (1981).

*Id.* 932–933 (emphasis original).

There being no clear error,

The judgment is affirmed.

All concur.