*NOT RECOMMENDED FOR FULL-TEXT PUBLICATION*
File Name: 05a0722n.06
Filed: August 18, 2005

No. 04-5904; 04-5929

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MEGAN MANN, by TODD MANN, PARENT, GUARDIAN and NEXT FRIEND, | ) ) ) ) | |
| Plaintiff-Appellant/Cross-Appellee, | ) ) | |
| v. | ) ) ) | **ON APPEAL** FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF |
| THE HARTFORD; OMNI INSURANCE COMPANY; OMNI INDEMNITY COMPANY, | ) ) ) ) | KENTUCKY |
| Defendants-Appellees/Cross-Appellants. | ) ) ) | **OPINION** |

Before:  MOORE and COLE, Circuit Judges, and WISEMAN,[*] Senior District Judge.

THOMAS A. WISEMAN, JR., Senior District Judge.  Plaintiff-Appellant Megan Mann,

by and through Todd Mann, parent, guardian and next friend ("Appellant"), appeals the district

court's order granting summary judgment to Defendants-Appellees The Hartford, Omni Insurance

Company, and Omni Indemnity Company (collectively, "Hartford") on Appellant's claim for bad

faith failure to settle an insurance claim.  In reaching its conclusion, the district court found that

Appellant presented sufficient proof of bad faith on the part of Hartford to create a jury question,

but nonetheless granted summary judgment in favor of Hartford based upon its determination that

Appellant failed to establish that she suffered any damages as a result of the alleged bad faith.

---

*The Honorable Thomas A. Wiseman, Jr., United States District Court for the Middle
District of Tennessee, sitting by designation.

Hartford has filed a cross-appeal in which it contends that the district court erred in determining that Appellant presented sufficient evidence of bad faith on the part of Hartford to survive summary judgment.

We agree and hold that, under Kentucky law, Appellant has failed to present sufficient evidence that Hartford engaged in bad faith to withstand a motion for summary judgment. We therefore **AFFIRM** the district court's judgment in favor of Hartford on that basis without reaching the issues of whether Appellant established proof of actual damages or whether, under Kentucky law, she would be permitted to recover punitive damages for bad faith even in the absence of actual damages. *See In re Cleveland Tankers, Inc.*, 67 F.3d 1200, 1205 (6th Cir. 1995) ("[A] reviewing court can sustain the judgment of a lower court on any ground that finds support in the record..") (quoting *United States v. Anderson County*, 761 F.2d 1169, 1174–75 (6th Cir.), *cert. denied*, 474 U.S. 919 (1985)).

With respect to Hartford's cross-appeal, we find that Hartford has no standing to appeal because it was not actually aggrieved by the district court's judgment. *Cf. Allstate Ins. Co. v. Wayne Co.*, 760 F.2d 689, 692–95 (6th Cir. 1985) ("A party must be aggrieved by a district court to have standing to appeal."); *Bryant v. Technical Research Co.*, 654 F.2d 1337, 1343 (9th Cir. 1981). Instead, Hartford was simply defending the district court's judgment on different grounds without seeking any affirmative relief from that judgment. Hartford's cross-appeal is therefore **DISMISSED** as moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 7, 2001, a car operated by Patti Mann, Appellant's mother, was involved in a head-on collision (the "Accident") with a car operated by non-party Sheila Connor. Ms. Mann and Ms.

Connor were both injured in the Accident, as were Appellant, then eight years old, and her two-year-old brother Jeremy, both of whom were passengers in the Mann vehicle. Ms. Mann was ultimately determined by the police investigating the scene to have been at fault in the Accident.

Prior to the Accident, Appellant's father, Todd Mann, had purchased from Hartford an automobile insurance policy covering himself and his wife, Patti Mann, and providing the minimum coverage for bodily injury permitted by Kentucky law—a maximum of $25,000 per person with a total limit of $50,000 per accident. This policy was in effect at the time of the Accident.

On May 9, 2001, Hartford employee Rod Willie sent a letter to Patti Mann explaining how to apply for personal injury protection ("PIP") benefits. By May 22, 2001, Hartford had obtained a copy of the police report, spoken with Ms. Connor and Mr. Mann, determined that Ms. Connor had already incurred over $90,000 in medical bills, and concluded that Ms. Mann was probably at fault although the investigation was not considered complete at that time. Hartford sent Mr. Mann a letter dated May 22, 2001 stating that it was still in the process of investigating the claim but that it appeared the claims arising from the Accident would exceed the policy limits. The letter further stated, "We will do everything we can to settle these claims within your policy limits." (Joint Appendix ("JA") at 95.) On May 23, an attorney retained by the Manns wrote Rod Willie to give notice that he represented Appellant Megan Mann and "to confirm . . . the voice mail message Mr. Mann left with you on Monday, May 14." The letter specifically requested that no settlement payments be made under the policy absent Mr. Mann's prior approval, pursuant to Ky. Rev. Stat. § 304.39-241.[1]

_____

[1]Section 304.39-241 states: "An insured may direct the payment of benefits among the different elements of loss, if the direction is provided in writing to the reparation obligor. A reparation obligor shall honor the written direction of benefits provided by an insured on a

Counsel for Ms. Connor contacted Hartford by telephone on May 25, 2001 and followed up with a letter dated June 4. On June 25, 2001, Ms. Connor's attorney wrote to Hartford's claims representative to demand payment to her of the limits of the Mann policy. Hartford responded with a letter dated June 30, 2001 requesting additional information regarding Ms. Connor's medical costs. In response, counsel for Ms. Connor submitted a settlement brochure on August 20, 2001. On August 27, 2001—three and a half months after the accident—Sheila James, acting for Hartford, offered to settle with Ms. Connor for $25,000. Ms. Connor accepted the settlement proposal and released all potential claims against Patti Mann on September 26, 2001. Ms. James did not discuss the settlement with Ms. Connor with Todd or Patti Mann ahead of time, contrary to Mr. Mann's request.

On August 16, 2001, Hartford notified the Manns, through their attorney, that PIP benefits had been exhausted. Hartford received no communication from the Manns or their attorney after May 23, 2001 until November 6, 2001, when the Manns' attorney sent Rod Willie at Hartford a settlement brochure on behalf of Megan Mann, as well as a separate settlement brochure on behalf of her younger brother, Jeremy Mann. The attorney's cover letter asked, "If you will, please review this matter and get back with me just as soon as possible." (JA at 118.) The letter did not make a specific settlement demand or specify a date by which Mr. Willie should respond. On December 28, 2001, the attorney sent another letter, indicating that he had received no response to his November 6 letter and requesting a response within ten days. On January 8, 2002, Mr. Willie contacted the attorney's office to let him know that Sheila James was handling the claim on behalf of Hartford. On January 10, Ms. James called the attorney's office and left a message indicating that

prospective basis."

4

she was reviewing the file and would call during the week of January 14, 2002. She did not do so.

On January 31, 2002, the attorney for Megan sent a letter to Sheila James giving a fifteen-day deadline for making a settlement proposal. On February 4, 2002, Ms. James first began reviewing Megan's file. On the same day, she sent a request to her supervisor for authorization to offer $25,000 (the policy limits) to the Manns to settle with both Megan and Jeremy. On February 26, 2002, Megan and Jeremy filed suit in Christian County Circuit Court against their mother and Ms. Connor. On February 27, 2002, before Hartford had notice that suit had been filed, Ms. James received authorization from her supervisor to settle, and on February 28, still without knowledge that suit had been filed, she extended an offer to the Manns to settle with both Megan and Jeremy for a total of $25,000, the remainder of Hartford's policy limits.

The parties ultimately mediated the matter on October 24, 2002, which resulted in a settlement requiring Hartford to pay Jeremy $22,500 and Megan $25,000, in addition to the PIP benefits that had already been paid, and notwithstanding the $50,000 policy limit and the previous payment of $25,000 to Ms. Connor.

Shortly after the settlement closed, Appellant filed the underlying action alleging that Hartford had violated Kentucky's Unfair Claims Settlement Practices Act ("UCSPA") and had engaged in bad faith by failing to fairly and reasonably settle her claims. Appellant, in addition to pointing to the delay on the part of Hartford and its separate settlement with Ms. Connor, claims that Hartford knew Sheila James was significantly behind on a large number of her cases but failed to take corrective action. The record in fact reflects that on December 16, 2001, Ms. James supervisor, Mr. McCullough, reviewed Megan's file and made a note to Ms. James that the claim should be addressed ASAP. Mr. McCullough never followed through to see whether his recommendation was

5

heeded.

The district court found that Appellant stated a claim sufficient to raise a jury question as to whether Hartford had engaged in bad faith, but nonetheless granted summary judgment to Hartford on the basis that proof of actual damages was an essential element of a bad-faith claim and Appellant had failed to demonstrate any damages suffered as a result of Hartford's alleged bad faith. Appellant appeals the dismissal of her claims, asserting that she did suffer actual damages and that under clearly articulated Kentucky law, she may recover punitive damages even without establishing entitlement to compensatory damages. Hartford has filed a "cross-appeal," in which it asserts as an alternative defense for the judgment in its favor that no evidence exists that would demonstrate bad faith on the part of Hartford.

## II. ANALYSIS

### A. Standard of Review

This Court reviews a district court's decision to grant summary judgment *de novo*. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To the extent there are any disputed issues of fact, this Court must view the evidence in the light most favorable to the nonmoving party to determine whether the moving party is nonetheless entitled to summary judgment as a matter of law. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986).

### B. Establishing a Claim for Bad Faith Failure to Settle an Insurance Claim

6

In this diversity case, the substantive law of the state of Kentucky applies. *Talley v. State Farm Fire and Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000). The Kentucky Unfair Claims Settlement Practices Act recognizes that failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies, failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies, and not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear constitute "unfair claims settlement practice[s]." Ky. Rev. Stat. § 304.12-230.[2]

A violation of the provisions of the UCSPA can in some instances provide a private cause of action for tortious misconduct based on bad faith, but mere violation of the statute *per se* does not give rise to a claim for bad faith. In fact, under the very high standards established by Kentucky courts, recovery on a bad-faith claim will be permitted only where the claimant can show that the insurer: (1) was obligated to pay a claim; (2) lacked a reasonable basis in law or fact for denying the claim; and (3) either knew that there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed. *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997) (quoting *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993), and *Federal Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844, 846–47 (Ky. 1986) (Leibson, J., dissenting)). Further, a cause of action for statutory bad faith premised on a violation of the UCSPA may be maintained *only* if the evidence suffices to justify punitive damages under this standard. *Id.* In order to justify an award of punitive damages, there must be proof of bad faith sufficient for the jury to

---

[2]UCSPA specifically prohibits twelve additional enumerated practices that are not relevant here. *See* Ky. Rev. Stat. § 304.12-230.

conclude that there was conduct that was outrageous or because of the defendant's evil motive or reckless indifference to the rights of others. *Id.*

In other words, a claimant must show something beyond mere negligence or breach of contract to state a claim for bad faith in the insurance context. *See Big Yank Corp. v. Lib. Mut. Fire Ins. Co.*, 125 F.3d 308, 312 (6th Cir. 1997) (applying Kentucky law, holding: "An action for bad faith requires something more than mere negligence. The term itself implies some intentional wrongful conduct. Mere errors in judgment should not be sufficient to establish bad faith.") (quoting *Blue Cross & Blue Shield of Ky., Inc. v. Whitaker*, 687 S.W.2d 557, 559 (Ky. Ct. App. 1985)). Thus, "[l]iability for bad faith will arise only in those instances where an insurer acts with some degree of conscious wrongdoing, reckless[ly] or in a manner which reveals an unjustified gamble at the stake of the insured." *Matt v. Liberty Mut. Ins. Co.*, 798 F. Supp. 429, 434 (W.D. Ky. 1991), *aff'd*, 968 F.2d 1215 (6th Cir. 1992) (table).

Under this standard, "mere delay in payment does not amount to outrageous conduct *absent some affirmative act of harassment or deception.*" *Motorists Mut.*, 996 S.W.2d at 452 (emphasis added); *cf. Zurich Ins. Co. v. Mitchell*, 712 S.W.2d 340, 341 (Ky. 1986) (in workers' compensation context, a former employee failed to state a claim of bad faith or outrage where the only conduct complained of was a delay in the payment of medical benefits). "In other words, there must be proof or evidence supporting a reasonable inference that the purpose of the delay was to extort a more favorable settlement or to deceive the insured with respect to the applicable coverage." *Motorists Mut.*, 996 S.W.2d at 452–53.

In this case, Appellant points to various technical violations of the UCSPA and insurance regulations by Hartford, including a requirement that insurers "make an appropriate reply within

8

fifteen (15) days on all other pertinent communications from a claimant which reasonably suggest that a response is expected." 806 Ky. Admin. Regs. 12:095 § 5(3) (quoted in Appellant's 3d Br. at 18). Not only did Hartford violate that rule, it apparently did not even have a policy in place for responding within fifteen days to claimant communications. It appeared to have a generally followed but unwritten policy for responding within thirty days, but the agent assigned to Appellant's claim broke that rule too. According to Appellant, "[t]he actions of Appellee can only be construed as willful conduct demonstrating complete disregard for Appellant's severe injuries and extensive medical bills." (Appellant's 3d Br. at 13.) Hartford, on the other hand, contends that Appellant has only established delay resulting from neglect but has failed to come forward with any proof suggesting the delay was intentional or motivated by malice or reckless indifference.

The district court here concluded that the plaintiff did not rely on delay alone, but indicated that "she intends to demonstrate that the delay was not inadvert, but was part of an overall course of conduct motivated by defendants' unilateral decision to avoid excess judgment rather than reach an equitable decision as to all claimants." (JA at 16.)

The district court's conclusion is unwarranted, for several reasons. First, a plaintiff at the summary judgment stage cannot merely indicate what she "intends to demonstrate"; she must instead come forward with proof sufficient to support her claims. Appellant here does have evidence of neglect, delay, and technical violations of the UCSPA. To establish a claim for bad faith, however, Appellant must present evidence, whether direct or circumstantial, from which a jury could reasonably conclude that the delay and the statutory violations were intentional, systemic, or based on any conscious decision at all. She has not done so, despite having availed herself of the

opportunity to take full discovery.[3] *Cf. Motorists Mut.*, 996 S.W.2d at 452–53 (noting the claimant must point to proof "supporting a reasonable inference that the purpose of the delay was to extort a more favorable settlement or to deceive the insured with respect to the applicable coverage").

Moreover, given that Ms. Mann's liability in the Accident was clear, Hartford's prompt settlement with Ms. Connor cannot reasonably be characterized as anything other than an attempt to prevent the insured parties (the Manns) from having to deal with a tort claim for damages well in excess of the policy limits. Further, if Ms. Connor had filed suit, Hartford would have had an obligation under these circumstances to settle, not to litigate. The adjuster in fact testified that her primary concern in settling with Ms. Connor was to prevent an "excess judgment" against Todd Mann. (S. James Dep. at 27, JA at 485.)[4] It is purely speculative to infer from this evidence that Hartford was simply acting in its own self-interest.

Finally, Appellant's evidence, even considered in the aggregate, is simply not sufficiently "outrageous" to survive a motion for directed verdict on the question of punitive damages, particularly given that Hartford never actually denied the claim, and when it finally did come

---

[3]Appellant points to the fact that Sheila James' superior had reviewed Megan's file in December and made a note to Ms. James to review the file ASAP. That evidence, rather than substantiating the bad-faith claim, indicates that there was no intentional wrongdoing on the part of Hartford.

[4]Ms. James testified that the initial delay resulted from the fact that there was no specific demand and no specific time frame stated in the settlement brochure for replying. Ms. James also testified that her notes show she placed Appellant's claim "in line for eval" in November 2001, and she simply did not know why she did not get around to evaluating the claim prior to February 4, other than because of the fact that the end of the year is always a hectic time and that she probably just had too much to do at that point. (S. James Dep. at 46, JA at 501–04.) Ms. James further stated that she reviewed Appellant's claim on February 4, submitted a request on that day to her supervisor to offer the policy limits (to settle Megan's and Jeremy's claims), heard back in the affirmative from her supervisor on February 27, and made the offer on February 28, without knowledge that suit had already been filed by then. (S. James Dep. at 506–08.)

forward with an offer, albeit after approximately three months of delay, it was for the policy limit. *Cf. Motorists Mut.*, 996 S.W.2d at 452–53 (reversing jury verdict in favor of plaintiff on the bad-faith claim, stating: "[M]ere delay in payment does not amount to outrageous conduct absent some *affirmative act of harassment or deception*.") (emphasis added).

There is no direct proof of bad faith on the part of Hartford, and insufficient circumstantial evidence of conscious wrongdoing or gross negligence to support an inference of bad faith. On these grounds, we find that summary judgment for Hartford is warranted, without reaching the question of whether Appellant established proof of actual damages, or whether she would be entitled to recover punitive damages even if she was unable to show she suffered actual damages.

## CONCLUSION

The district court's determination that Appellant presented sufficient proof of bad faith to survive summary judgment was in error, but its ultimate decision to grant Hartford's motion for summary judgment was correct. Summary judgment in favor of Hartford is therefore **AFFIRMED**, and Hartford's cross-appeal is **DISMISSED** as moot.