Loretta WITTMER, Movant,

v.

Tamara JONES and State Farm Mutual
Automobile Insurance Company,
Respondents.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Movant,

v.

Loretta WITTMER and Tamara
Jones, Respondents.

Nos. 92–SC–707–DG, 92–SC–710–DG.

Supreme Court of Kentucky.

Sept. 30, 1993.

As Modified Oct. 11, 1993.

Phillip G. Abshier, Bamberger & Abshier and James S. Watson, Castlen, Wilkey & Watson, Owensboro, for Wittmer.

Robert V. Bowers, Jr.; Bennett, Bowman, Triplett & Vittitow, Owensboro, for Jones.

Lee E. Sitlinger, Sitlinger, McGlincy, Steiner & Theiler, Louisville, for State Farm.

LEIBSON, Justice.

Three recent decisions from this Court recognize a cause of action to recover tort damages against insurance companies upon proof of bad faith failure to pay claims clearly due and payable. These cases are: *Stevens v. Motorists Mut. Ins. Co.*, Ky., 759 S.W.2d 819 (1988), recognizing a statutory bad faith claim by an insured against his own insurer under the Consumer Protection Act (CPA), KRS 367.110, et seq.; *State Farm Mut. Auto. Ins. Co. v. Reeder*, Ky., 763 S.W.2d 116 (1989), recognizing the existence of a claim by a third-party for damages sustained by reason of an insurance company's violation of the Unfair Claims Settlement Practices Act (UCSPA), KRS 304.12–230 and 235; and, finally, *Curry v. Fireman's Fund Ins. Co.*, Ky., 784 S.W.2d 176 (1989), recognizing an insured's recovery against his own insurer of consequential and punitive damages for bad faith in breach of a business insurance policy based on common law principles. In so doing, *Curry* overruled our previous decision to the contrary in *Federal Kemper Ins. Co. v. Hornback*, Ky., 711 S.W.2d 844 (1986). In the present case we are called upon to explain, as best we can, the mechanics involved in applying these three decisions.

Loretta Wittmer and Tamara Jones were involved in a motor vehicle accident on October 19, 1988, in Owensboro, Kentucky. Jones failed to yield the right-of-way after a stop sign and struck Wittmer's vehicle in the side, causing it to career out of control into a pole. Jones carried liability insurance with

State Farm, whose claims representative contacted Wittmer within a few days after the accident and offered to pay her $3,562.66, the cost of repairs to the vehicle using new parts. Wittmer had purchased the car new only three weeks before, and had about 1,000 miles on it. She refused State Farm's offer because she wanted State Farm to replace her vehicle with a new vehicle equivalent to hers before it was damaged. When State Farm refused to offer more than the cost of repair she went to an attorney. Her attorney negotiated with State Farm, eventually demanding "the difference between the fair market value (FMV) immediately before and immediately after" the car was damaged, placing the before FMV at $10,500, which was substantially equivalent to the new car value of Wittmer's vehicle. The after FMV was stated at $4,000, and the difference demanded was $6,500. The lawyer's position was, and remains to this day, that the fact that a vehicle is repaired, no matter how perfectly, necessarily depreciates its FMV when compared to an identical car which has never been wrecked, and State Farm has unreasonably refused to take this factor into account. The problem with the settlement demand letter from Wittmer's lawyer is that, while rejecting cost of repair, the figures set forth for before and after FMV are not attributed to any reliable source, or supporting documents of any kind. They are described simply as "[o]ur computation." Likewise, the letter demands "loss of use" at "$280," an unsubstantiated figure.

Wittmer's principal claim, throughout this litigation, has been that because the UCSPA specifies it is an "unfair claims settlement practice" to "refuse to pay claims without conducting a reasonable investigation based upon all available information (KRS 304.12–230(4))," when State Farm used repair cost rather than obtaining appraisals to fix the difference in FMV, it violated the terms of the Act. However, the facts are that Wittmer's counsel did not obtain and present appraisals in connection with his demand letter. Further, Wittmer's trial expert (whose credibility was arguably impaired since he was a brother-in-law to one of Wittmer's attorneys) testified to a substantially lower before FMV than the new car value presented in Wittmer's demand letter and testified that the difference in FMV was $5,150 rather than the $6,500 claimed in the demand letter.

State Farm's trial witness was the repair shop operator who had provided the repair estimate. He testified the difference in FMV was $3,000 to $3,500. Ultimately the jury fixed the FMV difference at $3,700.

State Farm acknowledges that when a vehicle has been wrecked, even though perfectly repaired, this could make a difference to a knowledgeable buyer. But nobody has ever put a dollar value on this difference. Further, the regulations provided by the Commissioner of Insurance to implement the Act, to provide insurers with guidelines for dealing with the public under the UCSPA, specify that:

> "Repair estimates *or* appraisers' reports may be used to indicate the difference in fair market value." 806 KAR 12:090, Sec. 8(2), 1989. [Emphasis added.]

Wittmer sued Jones in tort, alleging property damage to her automobile and, in the same Complaint, sued State Farm charging violation of the UCSPA, demanding damages sustained by reason of such violation, plus prejudgment interest, attorney's fees and court costs. Jones answered alleging contributory fault as part of her defense. State Farm utilized a different lawyer to defend its insured from the one used to defend the company, and moved to bifurcate the issues to avoid prejudice that might accrue to Jones' defense from having the claims joined for trial. The trial court overruled this motion. Thereafter, notwithstanding the joinder, the jury at trial found Wittmer 30% at fault, and apportioned the $3,700 in damages awarded against Jones accordingly, and awarded "0" damages against State Farm. Against State Farm, in instructions which have not been questioned on this appeal, the trial court listed five different obligations placed upon insurers under the UCSPA as potential violations for the jury to consider. The jury verdict found that there was a violation of the UCSPA even though no damages were awarded.

The only element of damages specified in the instructions on the UCSPA claim for the jury's consideration was:

"Emotional distress and mental anguish suffered by reason of violating the Kentucky Unfair Claims Settlement Practices Act."

State Farm suggests the verdict was "0" because, if anything, there were only "technical violations" of the act. The trial court decided not to instruct on punitive damages finding insufficient evidence to warrant such a claim. The trial court entered judgment on the verdict for State Farm.

Wittmer appealed claiming the instructions were in error because they did not allow the jury to consider prejudgment interest or punitive damages, and the Court of Appeals agreed, reversing and remanding on error in the instructions.

Also, Wittmer claimed the trial court's instruction on damages was not sufficient to cover her "economic loss" from being deprived of a vehicle "for 840 days," the time period from the date of accident until she finally bought a new car. In this, the Court of Appeals affirmed the trial court.

Finally, Wittmer also appealed the verdict and judgment in her claim against Jones, claiming she was entitled to a directed verdict placing 100% of the fault for the accident upon Jones and that jury verdicts for storage costs and loss of use were inadequate as a matter of law. The Court of Appeals affirmed the trial court on this issue.

State Farm moved for discretionary review of the Court of Appeals decision, claiming "the facts offered at trial did not support an instruction on punitive damages" and "the trial court did not err in failing to award prejudgment interest." Wittmer has also filed a motion for discretionary review against Jones, her principal claims being: (1) as a matter of law, Jones was 100% at fault for this accident, and (2) the trial court erred in failing to instruct against State Farm on economic loss from being deprived of her vehicle in addition to emotional distress and mental anguish.

We granted discretionary review because this case raises recurring issues in claims of this nature. For reasons to be stated, we reverse the Court of Appeals in part. We affirm the final judgment of the trial court as to Jones, and also as to State Farm although we disagree with the road the trial court took to get there.

██ Turning first to the contributory fault issue, giving Jones the benefit of the doubt, as the jury, the trial court, and the Court of Appeals have already chosen to do, we uphold the finding that there was sufficient evidence of negligence to apportion fault against Wittmer. We will not second-guess the trial court and the Court of Appeals in weighing the evidence on contributory fault in what is admittedly a close question. Jones failed to yield the right-of-way after a stop sign, crossed the center line to some degree (however slight), and struck Wittmer's vehicle broadside. But the issue here is not Jones' negligence, but Wittmer's contributory fault. Wittmer called Jones to the stand as a witness and her testimony presented evidence from which the jury could infer Wittmer's contributory fault. Jones admitted entering the intersection without seeing Wittmer's vehicle, claiming she was blinded by the sun until near the center of the intersection. A driver with a duty to yield the right-of-way "will not be heard to say that [she] looked but did not see an approaching car" "plainly visible" if she had been keeping a proper lookout. *Couch v. Hensley*, Ky., 305 S.W.2d 765, 767 (1957); *Vaughn v. Jones*, Ky., 257 S.W.2d 583 (1953). But Jones also gave testimony to the effect that her vehicle was moving so slowly that Wittmer had ample opportunity to see her vehicle, sound her horn in warning, and otherwise avoid a collision. A driver approaching an intersection with the right-of-way has no absolute right to proceed so unconditional that she can ignore duties of reasonable lookout, sounding a horn when necessary, and avoiding collision when there is reasonable opportunity to do so. *See Cox v. Cooper*, Ky., 510 S.W.2d 530 (1974), and other cases upholding submitting the case against the driver on the dominant roadway to the jury, which include *Killman v. Taylor*, Ky., 453 S.W.2d 574 (1970) and *Browning v. Callison*,

Ky., 437 S.W.2d 941, 943 (1969) (quoting *Tilford v. Garth*, Ky., 405 S.W.2d 6, 8 (1966)):

"Whether that carelessness [of the motorist on the inferior road] is the only proximate cause depends on whether the other driver had reasonable time and opportunity to avoid the collision after he is able to apprehend the negligence of the first motorist."

We conclude there was evidence from which the jury could infer "reasonable time and opportunity" to take steps "to avoid the collision," as stated in the above quotation.

■ Other claims raised in Wittmer's appeal against Jones are that the jury disregarded the evidence in awarding "0" for "loss of use," and awarding "$50" for storage and wrecker costs.

■ A tort claim against an offending motorist for compensatory damages for "loss of use" of a damaged vehicle extends only to the period reasonably necessary to make repairs, and applies only to a vehicle with a business use. *Anderson v. Shields*, 314 Ky. 228, 234 S.W.2d 739 (1950). Here the damaged vehicle was not repaired, but sold in its unrepaired state. Furthermore, there was no testimony as to business use. On the other hand, there was testimony that Wittmer's sister loaned her the use of a vehicle free of charge until Wittmer replaced her car. Loss of use claims of this nature do not cover inconvenience in being without a vehicle until one replaces it, or time consumed in negotiations for a settlement. *See Howard v. Adams*, Ky., 246 S.W.2d 1002 (1952).[1] If there is a place to argue for and to recover for the inconvenience which otherwise flows from being deprived of one's vehicle simply because one lacks funds to replace it, such place is confined to recovery for emotional distress and mental anguish occasioned as a consequence of an intentional tort. This is exactly where the trial judge placed it by his instructions against State Farm in the bad

faith phase of the case. To have covered it a second time in the instructions, or separate from the instruction on mental anguish, would have been a duplication.

■ Likewise, as to the item of recovery for storage costs, the difference between the $50 awarded and the $650 claimed resulted from Wittmer's decision that she wanted a new car rather than a repaired one while taking no steps to dispose of the salvage. Jones argued that Wittmer did not mitigate her damages as the law requires as to the claim for compensatory damages against Jones, and the evidence supports this inference. If, as suggested, there was undisputed evidence of $84 in damages, the difference between $50 and $84 falls under the *de minimis* rule.

We turn now to issues raised by the statutory bad faith claim prosecuted against State Farm under the UCSPA.

■ The gravamen of Wittmer's complaint is that State Farm had an affirmative duty to obtain appraisals establishing the before and after FMV of Wittmer's vehicle, and to offer this sum in payment of Wittmer's claim, rather than offering cost of repair. Further, Wittmer argues that if the offer of cost of repair was intended as a compromise based on disputed liability, the State Farm adjuster failed to "promptly provide a reasonable explanation of the basis" for denying full payment. *See* KRS 304.12–230(14).

Although State Farm, through Jones, successfully contested liability in part at the trial, it has never claimed that at the outset its adjuster was trying to compromise the loss when he offered to pay repair costs to satisfy Wittmer's property damage claim. On the contrary, his dispute with Wittmer was over whether the offer of repair costs was sufficient to pay what the law required. We conclude that, in present circumstances, this offer was sufficient to comply with the

---

1. After the publication of this Opinion, we discovered KRS 304.39–115, effective July 15, 1988, which states as follows:

"Loss of use of a motor vehicle, regardless of the type of use, shall be recognized as an element of damage in any property damage liability claim. Such a claim for loss of use of a motor vehicle shall be limited to reasonable and necessary expenses for the time necessary to repair or replace the motor vehicle."

This statute was not brought to our attention by the parties. Our Opinion does not consider the effect, if any, this statute would have on this case if it were in issue.

duty to negotiate in good faith posed by the UCSPA, and State Farm was entitled to a directed verdict on the claim of statutory bad faith. We do so for two interdependent reasons. The first involves the nature of the tort with which State Farm is charged, bad faith failure to promptly pay Wittmer's property damage claim in conformity with her demand. The second involves the nature of the proof offered to establish this claim.

We start with the proposition that there is no such thing as a "technical violation" of the UCSPA, at least in the sense of establishing a private cause of action for tortious misconduct justifying a claim of bad faith:

"[A]n insured must prove three elements in order to prevail against an insurance company for alleged refusal in bad faith to pay the insured's claim: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.... [A]n insurer is ... entitled to challenge a claim and litigate it if the claim is debatable on the law or the facts."

This is a quote from Leibson, J., in dissent, in *Federal Kemper, supra,* 711 S.W.2d at 846–47, stating views which were incorporated by reference in this Court's Majority Opinion in *Curry v. Fireman's Fund,* 784 S.W.2d at 178. It applies to a claim of bad faith made by an insured against his own insurer, and *a fortiori* to a third-party's claim of bad faith against an insurance company.

The problem in the present case, at the trial level, was that the judge concluded there might be evidence that some sort of technical violations of the UCSPA occurred sufficient to submit the case against State Farm to the jury, but recognized there was no evidence of bad faith sufficient to justify punitive damages. Before the cause of action exists in the first place, there must be evidence sufficient to warrant punitive damages:

"The essence of the question as to whether the dispute is merely contractual or whether there are tortious elements justifying an award of punitive damages depends first on whether there is proof of bad faith and next whether the proof is sufficient for the jury to conclude that there was 'conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.' *Restatement (Second) Torts,* Sec. 909(2) (1979), as quoted and applied in *Horton v. Union Light, Heat and Power Co.,* Ky., 690 S.W.2d 382, 388–90 (1985)." *Federal Kemper, supra,* 711 S.W.2d at 848.

■ This means there must be sufficient evidence of intentional misconduct or reckless disregard of the rights of an insured or a claimant to warrant submitting the right to award punitive damages to the jury. If there is such evidence, the jury should award consequential damages and may award punitive damages. The jury's decision as to whether to award punitive damages remains discretionary because the nature of punitive damages is such that the decision is always a matter within the jury's discretion.

Throughout this litigation State Farm has presented various arguments against submitting the issue of punitive damages to the jury based on its interpretation of statutory language found in the new punitive damages statute enacted in 1988, now codified as KRS 411.184. It suffices to say that this Court could not interpret KRS 411.184 to destroy a cause of action for punitive damages otherwise appropriate without fatally impaling upon jural rights guaranteed by the Kentucky Constitution, Sections 14, 54, and 241. *Perkins v. Northeastern Log Homes,* Ky., 808 S.W.2d 809, 817 (1991). As we stated when addressing a similar problem in *In Re: Beverly Hills Fire Litigation,* Ky., 672 S.W.2d 922, 926 (1984): "We shall not so interpret it."

Here, the trial court recognized that there was not sufficient proof that State Farm was involved in intentional misconduct to warrant punitive damages, but failed to recognize that by the same token State Farm was entitled to a directed verdict on the claim of statutory bad faith. The Court of Appeals, on the other hand, was correct in recognizing that if

a cause of action existed against State Farm for bad faith violations of the UCSPA, the claimant was entitled to an instruction permitting an award of punitive damages. But the Court of Appeals failed to recognize the threshold problem, that, to begin with, the evidence was not sufficient to establish the tort had occurred.

Before addressing why the evidence was insufficient in present circumstances, there are two other issues raised in this case which require discussion.

First, State Farm argues that the trial court erred in failing to bifurcate the trial of the negligence action against Jones and try it separately from the claim of bad faith against State Farm. Turning once more to the Dissenting Opinion in *Federal Kemper* that was incorporated by reference into the Majority Opinion in *Curry:* "A bifurcated procedure was the proper way to try the present case." 711 S.W.2d at 849. This procedure "better protect[s] the rights" of the two different defendants because it keeps out of the first trial "evidence which was relevant to the issue of bad faith but unnecessary and possibly prejudicial ... in the trial of the preliminary question of liability." *Id.* While we see no impediment to joinder of the claims in a single action, at trial the underlying negligence claim should first be adjudicated. Only then should the direct action against the insurer be presented. Liability insurance should not be interjected needlessly into the trial of a negligence case. Here failure to bifurcate was prejudicial error but for the fact that no actual prejudice resulted. If we were going to reverse this case for a new trial, we would order bifurcation.

Next, the Court of Appeals correctly decided that if there was proof here to sustain a cause of action against the insurer for tortious misconduct in failing to pay this claim at the outset, the trial court should have allowed prejudgment interest on such amount as was not in dispute and should have been paid. This is not because interest should be allowed on an offer to settle a disputed claim, but only because interest is

due when there is an undisputed claim in a liquidated amount. As we stated in *Nucor Corp. v. General Elec. Co.*, Ky., 812 S.W.2d 136, 144 (1991), prejudgment interest "may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due." As with Wittmer's claim for punitive damages, here the problem with the claim for interest is that the circumstances do not support that claim. Interest should not be required except for a claim which is for a liquidated amount, and which is not disputed in good faith.

Further, Wittmer argues for consideration of the 1988 Amendment to the UCSPA which provides for statutory "interest at the rate of twelve percent (12%) per annum" "[i]f an insurer fails to make a good faith attempt to settle a claim" for "more than sixty (60) days from the date upon which notice and proof of claim" is properly submitted. *See* KRS 304.-12–235(1) and (2), eff. 7/15/88. But, the precise language in –235(1) specifies claims payable "to the named insured." *Id.* Whether the General Assembly intended the obligations of KRS 304.12–235 to apply to claims due to third parties as well as to the "named insured" is an issue of statutory construction which we leave for another day when there is proof to satisfy the threshold issue of the insurer's failure "to make a good faith attempt to settle." [2]

The problem with Wittmer's proof is three-sided.

First, it may well be that the FMV of a car is diminished because it has been in a wreck even if it has been repaired perfectly, but the claimant has failed to establish that fact as true or as applicable to this case, nor is it subject to judicial notice. Cost of repair has long been recognized by the decisions of this Court as *one way* to establish difference in FMV (*see Ecklar–Moore Express, Inc. v. Hood*, Ky., 256 S.W.2d 33 (1953)), and is presently so recognized by the regulations the Commissioner of Insurance promulgated to implement the UCSPA (806 K.A.R. 12:090, Sec. 8(2), quoted earlier). Although an insurer is under a duty to promptly investigate

2. See also further amendment of KRS 304.12– 235, eff. 7/13/90.

and pay claims where it has no reasonable grounds to resist in good faith, neither this duty nor any provision of the UCSPA requires the insurer to assume responsibility to investigate the amount of the claimant's loss for the claimant. The insurer may choose to accommodate its insured or a claimant by providing appraisals, but its legal responsibility is limited to payment upon proof of loss. The only proofs presented to the State Farm adjuster were the unsubstantiated amounts stated in the demand letter from Wittmer's counsel. This letter provided neither supporting documents nor reference to reliable sources. In another case where the record establishes that an insurance company has operated arbitrarily and unreasonably, or from ulterior motives, in offering only cost of repair, the offer so limited may be proof of bad faith, but this is not such a case. Nor does the evidence that State Farm's regular practice was to offer only cost of repair unless such cost exceeded market value, standing alone, provide the missing elements of proof.

Thus we conclude that State Farm was entitled to a directed verdict on Wittmer's claim against it. We reverse the Court of Appeals to the extent that its decision is inconsistent with this Opinion. We affirm the final judgment of the trial court.

All concur.