RENDERED: MAY 28, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0958-MR

GREGORY WOOSLEY, AS                                             APPELLANTS
ADMINISTRATOR OF THE ESTATE
OF DAVID H. WOOSLEY AND
OLIVIA MARIE WOOSLEY

                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE ANNIE O'CONNELL, JUDGE
                    ACTION NO. 12-CI-003910

STATE AUTO PROPERTY AND                                            APPELLEE
CASUALTY INSURANCE
COMPANY

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, LAMBERT, AND MCNEILL, JUDGES.

COMBS, JUDGE:  Gregory Woosley, as administrator of the Estate of David

Woosley, and Olivia Marie Woosley, the surviving minor daughter of David

Woosley, appeal separate summary judgments of the Jefferson Circuit Court.  One

judgment held that a homeowner's policy issued by State Auto Property and

Casualty Company ("State Auto") did not provide coverage to its insured, Lisa Wright, the tortfeasor who was involved in the accident that claimed the life of David Woosley. The second judgment held that the third-party claims of bad faith asserted against State Auto by the Estate and Olivia Woosley (referred to hereinafter as Olivia in order to avoid confusion) with respect to the homeowner's policy could not succeed as a matter of law. After our review, we affirm.

On July 16, 2011, David Woosley was driving his motorcycle on the Watterson Expressway in Jefferson County. He was riding with a number of fellow bikers that included Douglas Carwile and Carwile's passenger, Lisa Wright. Lisa Wright was State Auto's insured under both an auto policy and a homeowner's policy.

In a congested construction zone, the group of motorcyclists encountered Jazmen Sowell, who was attempting to merge onto the expressway. Sowell's automobile nearly collided with the group of motorcyclists. A police investigator described what happened next as a "road rage" incident. Some of the motorcyclists hurled angry words and gestures at Sowell. When Carwile's motorcycle drew up next to Sowell's vehicle, a verbal altercation ensued. Wright aimed an obscene gesture at Sowell. Sowell's automobile swerved into the adjoining lane of travel and struck Carwile's motorcycle. As she struggled to correct her steering, Sowell lost control of the vehicle. Her car struck a concrete

barrier, careened over three lanes of traffic, and collided with the motorcycle being operated by David Woosley. Woosley died of his injuries. No aggressive behavior has been attributed to Woosley. Carwile, Wright, and Sowell were uninjured.

Gregory Woosley, the decedent's surviving son and an attorney, made a claim against Sowell's auto insurance policy. Sowell's insurer offered to tender the policy limits.

In November 2011, Gregory Woosley informed Carwile and Wright that his father's Estate and Olivia would make claims against their separate insurance policies. Later, Carwile and Wright would indicate that Woosley explained to them that he did not believe that they were at fault but that he needed them to respond carefully so that their insurance companies would pay the claims he intended to assert. Woosley was appointed administrator of his father's Estate on February 20, 2012.

On June 6, 2012, the Estate provided information to State Auto indicating that the wreck was caused, in part, by Wright's actions. It also submitted, according to the Estate, "a very rough estimate of potential damages to David Woosley's estate that included the loss of a pension, substantial pain and suffering, medical expenses, and a loss of consortium claim by [Olivia]." The Estate demanded the limits of the auto policy that covered Wright as a resident of her parents' household and the limits of her parents' homeowner's policy.

Shortly later, the Estate contacted State Auto again. According to the Estate, State Auto indicated that it lacked sufficient information to evaluate the claim and that it could not make an immediate offer of settlement.

On July 16, 2012, the Estate and Olivia filed a wrongful death action against Sowell, Carwile, and Wright. The Estate alleged that Wright had encouraged Carwile to pursue and engage Sowell and/or had distracted Sowell by yelling and gesturing, causing Sowell to lose control of her automobile and ultimately to collide with Woosley's motorcycle, killing him.

On August 10, 2012, Teresa Dryden-Smith, on behalf of State Auto, advised the insureds that the company would provide a defense to Wright in the wrongful death action. It did so under an express reservation of rights concerning the coverage afforded by the terms of the automobile policy issued to Wright's parents. In her correspondence, Dryden-Smith cited specific provisions of the policy underlying State Auto's concern about the coverage afforded.

On August 15, 2012, Jim Garvey of State Auto wrote to Wright, explaining that the provisions of her parents' homeowner's policy "may not cover you for some or all aspects" of the claim. He advised that the letter was not meant as a denial of the claim but rather as an expression of the uncertainty of coverage. He cited specific policy provisions in support of State Auto's position -- including one that excluded coverage for "motor vehicle liability." He advised Wright that

State Auto would continue to be involved in the matter only under a reservation of its right to deny coverage.

In a claim note prepared just weeks later, State Auto memorialized its impressions that an early settlement of the wrongful death action was unlikely. State Auto was skeptical that liability could be apportioned to Wright as she was merely a passenger on the motorcycle -- a vehicle that was not involved in the collision that killed Woosley. While she was not in position to direct negotiations, Wright was adamant that State Auto should deny the claim as she did not believe that she bore any responsibility for the collision. Wright indicated to a State Auto adjuster that Gregory Woosley promised her (Wright) that he would dismiss the action against her if State Auto denied the claim. Wright's counsel filed an answer to the complaint and denied her liability for the collision that killed Woosley.

In late September 2012, Gregory Woosley, on behalf of the Estate, spoke to Wright's counsel by telephone. He explained that Wright's liability had been conclusively established by the police investigation that followed the collision and that damages were significant. On this basis, the Estate again demanded the limits of the policies.

On March 13, 2013, the Estate sent a demand to Wright's counsel for "the maximum policy limits of Ms. Wright's auto and/or homeowner's policies." Wright's counsel responded in writing the following day. Counsel indicated that

the issue of Wright's liability remained disputed. Without sufficient evidence to support the claim, counsel advised that it would be imprudent for State Auto "to make anything beyond a nuisance or expense[-]based offer." Based upon their previous communications, counsel assumed that the Estate would not be interested in a nuisance value offer but indicated that she would await a response.

On March 15, 2013, the Estate indicated that it would evaluate "any offer to determine whether it reasonably reflects Ms. Wright's relative degree of culpability in the wreck." In response, counsel for Wright wrote, "I appreciate your efforts to articulate the Estate's position on liability. Once we have completed written discovery perhaps we can explore settlement. . . ."

In August 2013, Wright's counsel advised State Auto by letter that the Estate had again made a demand for the limits of both the homeowner's and the auto policies. Counsel observed that the Estate had only recently secured service of process on Sowell, however. She indicated that discovery could now proceed, and she outlined a plan for deposing several witnesses.

In November 2013, Wright's counsel advised State Auto by letter that the Estate had made a demand of $100,000, "apparently demanding the limits of the automobile liability policy." She explained that despite several conversations with Gregory Woosley, counsel for the Estate "did not seem to register that a demand for settlement under one policy would require the estate to give a

complete, full and final release to Lisa Wright barring any further attempt to collect on her homeowners [policy] or otherwise."

After Wright's counsel scheduled several depositions, Gregory Woosley secured co-counsel for the Estate. In a claim note that followed, State Auto documented its intention to evaluate the Estate's demand after depositions were completed. The depositions were rescheduled to allow for new counsel to join the litigation.

On June 13, 2014, prior to a scheduled mediation session, Wright's counsel prepared a report for State Auto. Counsel advised that the testimony of both Sowell and Carwile contradicted the Estate's theory as to Wright's liability. Sowell testified that she did not interact with Wright until after the collision and that she had not seen Wright's gesture toward her before the collision. Moreover, Sowell testified that she swerved and struck Carwile's motorcycle because she believed that Carwile and another motorcycle were swerving into her lane. Carwile denied that he had approached Sowell's vehicle at Wright's urging. Counsel concluded that Sowell had not been reacting to Wright when she lost control of her vehicle and collided with Woosley's motorcycle. In light of Carwile's testimony and inconsistencies in Sowell's recollection of events, defense counsel advised that a jury would be reluctant to apportion much liability to Wright -- if any. Counsel recommended a target settlement range of $50,000 to $70,000

based on an estimate of the value of the claim at $500,000 to $700,000 -- with 10% fault apportioned to Wright.

During the mediation conducted on July 11, 2014, the Estate advised that it would accept nothing less than the combined policy limits of $400,000 under both State Auto policies. State Auto countered with an offer to settle for $50,000.00 under the auto policy alone. State Auto held to its position that the homeowner's policy likely offered no coverage for the claims. The Estate did not accept State Auto's counteroffer, and the mediation session was ended. Following the mediation, the Estate reduced its demand by two pennies.

On September 4, 2014, Wright's counsel served the Estate with an offer of judgment pursuant to the provisions of our rules of civil procedure. Wright proposed to allow a judgment to be taken against her for $50,000 in full settlement of the claims against her. On October 28, 2014, State Auto advised Wright that it would deny coverage for liability under the provisions of the homeowner's policy issued to her parents.

On January 22, 2015, the Estate and Olivia amended their complaint to assert claims against State Auto under Kentucky's Unfair Claims Settlement Practices Act. KRS[1] 304.12-230. The Estate alleged that State Auto was obligated to provide coverage under both the auto policy and the homeowner's policy in the

---

[1] Kentucky Revised Statutes.

wrongful death action and that it had acted in bad faith by failing timely to resolve the claim. It alleged that State Auto wrongfully denied coverage, failed to pay the full value of the claim, and had unreasonably delayed the payment of the policy benefits. It claimed specifically that State Auto: (1) refused to pay the claims without conducting a reasonable investigation; (2) made no good faith attempt to settle the claim "until after the depositions of all parties and witnesses were conducted"; (3) made a settlement offer of only $50,000; (4) failed to provide a reasonable explanation for its $50,000 settlement offer; (5) failed to settle promptly the Estate's claims once Wright's liability had become reasonably clear; and (6) misrepresented pertinent facts or policy provisions relating to coverage. It also challenged State Auto's decision to take the deposition of Greg Woosley, "the purpose of which was to harass." State Auto answered the complaint and denied the allegations.

On May 8, 2015, Wright's counsel provided State Auto with a pre-trial report indicating that Wright's defenses remained strong. Counsel reported that the Estate continued to demand the combined limits of both State Auto Policies.

The underlying wrongful death action was tried to a jury over the course of four days in mid-August, 2015. After hearing the evidence, a jury returned a $1,149, 571.92 verdict for the plaintiffs. It apportioned 30% of fault to

Wright. On September 10, 2015, judgment was entered against Wright for $344,871.58, and she filed for bankruptcy protection. After the bankruptcy court's stay was lifted, State Auto tendered the limits of the auto policy ($100,000), plus interest, in partial satisfaction of the judgment against Wright.

The underlying tort claim against Wright having been adjudicated, discovery proceeded on the third-party, bad-faith claim asserted against State Auto. State Auto produced over 7000 pages of documents included in its claims file and presented five State Auto witnesses for deposition.

On August 23, 2018, State Auto filed a motion for summary judgment. It argued that coverage was not available under the homeowner's policy as a matter of law because the motor vehicle exclusion applied to the facts alleged by the Estate. Separately, it argued that it had not acted in bad faith in its handling of the claim against the auto policy because the Estate had been unwilling to negotiate within the policy limits and Wright's liability for Woosley's death had been unclear until the jury resolved the issue.

The Estate responded that the policy provision excluding coverage for motor vehicle liability did not apply as a matter of law and that genuine issues of material fact prevented entry of summary judgment with respect to its third-party claim against State Auto.

On May 16, 2019, the circuit court granted State Auto's motion for summary judgment with respect to the coverage available under the terms of the homeowner's policy. The court concluded that the tort claims against Wright "arose out of a fatal motor vehicle accident" and that the homeowner's policy expressly excluded coverage for injuries arising out of the operation of a motor vehicle. Citing this court's opinion in *Hugenberg v. West American Ins. Co./Ohio Cas. Group*, 249 S.W.3d 174 (Ky. App. 2006), the circuit court held that the homeowner's policy did not afford coverage in the underlying wrongful death action and that State Auto was entitled to judgment as a matter of law.

On July 17, 2020, the circuit court granted State Auto's motion for summary judgment with respect to the claim that it had acted in bad faith "in refusing to pay the remainder of the judgment." The court determined that the Estate and Olivia Woosley could not show that State Auto had an obligation to cover Wright's liability for the collision under the provisions of the homeowner's policy. Because the plaintiffs could not establish the elements of a third-party bad faith claim as outlined by the Supreme Court of Kentucky in *Wittmer v. Jones*, 864 S.W.2d 885 (Ky. 1993), the court concluded that State Auto was entitled to judgment as a matter of law. The Jefferson Circuit Court designated the judgment as final and appealable, there being no just cause for delay. This appeal followed.

-11-

On appeal, the Estate and Woosley argue that the circuit court erred by granting summary judgment with respect to State Auto's bad faith claims and handling practices; by concluding that the homeowner's policy does not provide coverage; and by failing to grant them a meaningful opportunity to conduct discovery. We address each of these arguments, reordering them for our analysis.

A motion for summary judgment should be granted only where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[2] 56.03. Summary judgment is appropriate where the movant shows that the adverse party could not prevail under any circumstance. *Pearson ex rel. Trent v. Nat'l Feeding Sys., Inc.*, 90 S.W.3d 46 (Ky. 2002).

We review the trial court's decision to grant summary judgment *de novo. Caniff v. CSX Transp., Inc.*, 438 S.W.3d 368 (Ky. 2014). We must consider whether the circuit court erred by concluding that there were no genuine issues as to any material fact and that State Auto was entitled to judgment as a matter of law with respect to both the issue of coverage under the homeowner's policy and the bad faith claim as it applied to that policy.

---

[2] Kentucky Rules of Civil Procedure.

The Estate and Olivia argue first that the court erred by granting summary judgment with respect to their third-party bad faith claims. They contend that the claims are based on a "prolonged and repeated pattern of conduct demonstrating State Auto never had any intention to settle the claims in good faith."

To prevail on a third-party, bad-faith claim a plaintiff must show that the insurer was obligated to pay the claim under the terms of the policy; lacked a reasonable basis for denying the claim; and knew that there was no reasonable basis to deny the claim or acted with reckless disregard. *See Hollaway v. Direct Gen. Ins. Co. of Mississippi, Inc.*, 497 S.W.3d 733 (Ky. 2016) (citing *Wittmer v. Jones*, 864 S.W.2d 885 (Ky. 1993)). Because the obligation of State Auto to pay the underlying claim is the threshold issue in resolution of the bad faith action, it is reasonable to address the disputed coverage issue before considering whether the circuit court erred by granting summary judgment on the claim of bad faith.

With respect to the issue of coverage under the terms of the homeowner's policy, the Estate and Olivia concede that interpretation of an insurance contract presents an issue of law for the court to resolve. *See Stone v. Kentucky Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809 (Ky. App. 2000). Where there are no factual disputes, courts may determine the meaning of such contracts on summary judgment. *Liberty Mut. Ins. Co. v. Bobzien by and through Hart*, 377

-13-

F.Supp.3d 723 (W.D. Ky. 2019). Our courts seek to determine the intention of the parties according to the language of the contract. *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699 (Ky. 2006), *as modified on denial of reh'g* (Mar. 22, 2007). Absent some ambiguity, provisions of an insurance policy are to be construed according to their plain and ordinary meaning. *Nationwide Mut. Ins. Co., v. Nolan*, 10 S.W.3d 129 (Ky. 1999).

The homeowner's policy issued to Lisa Wright's parents excludes from coverage various types of liability. For example, the policy specifically excludes coverage for motor vehicle liability. The policy defines "motor vehicle liability" as liability for injuries "arising out of" the maintenance, occupancy, operation, or use of a vehicle "by any person."

In its analysis, the Jefferson Circuit Court relied upon our decision in *Hugenberg v. West American Ins. Co./Ohio Cas. Group*, 249 S.W.3d 174 (Ky. App. 2006), where we considered a much narrower motor vehicle exclusion included in a homeowner's policy. In *Hugenberg,* the plaintiff suffered brain damage in an automobile accident in which he was a passenger. The plaintiff sued the drunk driver and his parents, the Hugenbergs, claiming negligent supervision of their minor child (the drunk driver). The Hugenberg's homeowner's insurance company denied coverage, citing an exclusion for "'bodily injury' . . . [a]rising out of . . . [t]he ownership, maintenance, use, loading or unloading of motor

vehicles . . . owned or operated by or rented or loaned to an 'insured[.]'" *Id.* at 186. With regard to whether the claim for injury "arose out of" the use of the motor vehicle, we determined that all that was necessary was "a causal connection with the accident." *Id.* Such a nexus was sufficient to conclude that the insured's use of an automobile met the "arising out of" language contained in the policy exclusion. *Id.* at 186-87. The Estate and Olivia contend that Wright's liability in this case is not causally connected to the use of a motor vehicle. We disagree.

The exclusion contained in the Wrights' State Auto policy is all-encompassing. Liability for bodily injury "arising out of" the maintenance, occupancy, operation, or use of a vehicle "by any person" triggers its application. It explicitly bars coverage for the insured's liability for injury whenever a motor vehicle is involved at the time and place of an accident. The exclusion is understandably broad as it is contained in a *homeowner's* policy, which would not generally encompass the comparatively greater risk of the use of a motor vehicle.

In their complaint, the Estate and Olivia alleged that the collision that claimed David Woosley's life involved the use of several motor vehicles. Sowell's vehicle was most clearly involved. The wrongful death claim asserted against Lisa Wright is based upon her behavior with respect to Sowell immediately before Sowell lost control of her vehicle. If not for Sowell's loss of control of the motor vehicle and collision with Woosley's motorcycle, there would be no claim against

Wright because there would have been no injury. The wrongful death claim is based upon Woosley's injuries, and his injuries were caused by Sowell's use of a motor vehicle.

Similarly, the jury found that Carwile's vehicle was involved. If not for Carwile's use of his motor vehicle (and Wright's use thereof as a passenger), Sowell would not have lost control of her car and collided with Woosley. Again, there would have been no claim against Wright because there would have been no injury.

We specifically reject the argument presented by the Estate and Olivia that the exclusion does not apply because *Wright's tortious actions* did not arise from the use of a motor vehicle. They maintain that the motor vehicle was simply the "situs" of Wright's negligence or one of the "conditions" of the injury and that her presence on the motorcycle was merely incidental to her liability.

This argument is premised upon a fundamental misunderstanding of the nexus required by our holding in *Hugenberg*. In *Hugenberg*, we reasoned that applicability of the exclusion turned on whether the bodily injury for which liability was sought to be imposed on the insured arose out of the use of a motor vehicle -- not whether the insured's tortious actions arose from the use of a motor vehicle. In other words, the theory of liability does not have to encompass the use of a motor vehicle; only the injury does. Nevertheless, this critical distinction

-16-

notwithstanding, it is clear that Wright's tortious actions did, in fact, arise from the use of a motor vehicle.

The evidence presented at trial indicates that the altercation among the various tortfeasors was based wholly upon their use of motor vehicles upon the roadway. "Road rage" encompasses their inability: to share the road safely with other drivers of motor vehicles; to tolerate the restraints of congested traffic and its effect on the drivers of motor vehicles around them; or to engage in simple, courteous goodwill toward the drivers of other motor vehicles using the expressway -- all factors at the heart of this tragedy. Under the circumstances of this case, where "road rage" alone fueled senselessly aggressive use of motor vehicles, it is disingenuous to contend that Wright's use of a motor vehicle was merely a "condition" of the injury or the "situs" of negligence. The tortfeasors' use of motor vehicles was the precise cause of the collision that claimed the life of David Woosley. Wright's liability unequivocally "arose out of" the maintenance, occupancy, operation, or use of a motor vehicle.

The plain meaning of the clear and unambiguous language of the insurance contract excludes from coverage the liability imposed upon Lisa Wright by the jury's verdict. Consequently, the circuit court did not err by granting summary judgment in favor of State Auto with respect to the coverage provided by the Wrights' homeowner's policy.

Having concluded that the trial court did not err by deciding as a matter of law that State Auto was not bound to provide coverage to Wright under her parents' homeowner's policy, we proceed to analyze its resolution of the bad faith claim. The Estate and Olivia argue that summary judgment was precluded because genuine issues of material fact remain to be decided. We disagree.

Kentucky's Unfair Claims Settlement Practices Act provides that an insurer engages in an unfair claim-settlement practice when it does "[n]ot attempt[] in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." KRS 304.12-230(6). Uncertainty as to the application of insurance policy provisions is a **reasonable and legitimate** reason for an insurance company to litigate a claim. *Messer v. Universal Underwriters Ins. Co.*, 598 S.W.3d 578 (Ky. App. 2019). If a genuine dispute exists with respect to a coverage issue, the insured's claim is fairly debatable. Where the claim is fairly debatable, a bad faith action cannot succeed. *Empire Fire & Marine Ins. Co. v. Simpsonville Wrecker Serv., Inc.*, 880 S.W.2d 886 (Ky. App. 1994). Absent a contractual obligation to pay the claim under the terms of the homeowner's policy, no bad faith cause of action, either at common law or by statute, lies against State Auto. *See Davidson Am. Freightways, Inc.*, 25 S.W.3d 94 (Ky. 2000).

Because the Estate and Olivia could not establish the elements to prove the bad faith claim against State Auto, the circuit court did not err by holding

that State Auto was entitled to judgment as a matter of law with respect to the claims against the homeowner's policy. Where State Auto was plainly entitled to judgment as a matter of law, further discovery related to this issue would have been an exercise in futility. Summary judgment was not improvidently granted on this basis.

As we have not been directed to a judgment disposing of the bad faith action stemming from State Auto's handling of the Estate's and Olivia's claims against the Wrights' auto policy, we do not address the argument that the circuit court erred with respect to that issue.

We AFFIRM the separate summary judgments of the Jefferson Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Bernard Pafunda
J. Brent Austin
Gregory A. Woosley
Lexington, Kentucky

BRIEF FOR APPELLEE:

John R. Martin, Jr.
Louisville, Kentucky

David M. Alt
I. Jordan Lowe
Chicago, Illinois