RENDERED:  NOVEMBER 7, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1137-MR

LEWIS BLEVINS AND ELIZABETH
BLEVINS                                                                    APPELLANTS


|         | APPEAL FROM HARLAN CIRCUIT COURT |
|---------|----------------------------------|
| v.      | HONORABLE KENT HENDRICKSON, JUDGE |
|         | ACTION NO. 19-CI-00235           |


PROGRESSIVE DIRECT
INSURANCE CO. AND ASHLEY
MIDDLETON                                                                   APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  A. JONES, L. JONES, AND KAREM, JUDGES.

JONES, A., JUDGE:  Lewis and Elizabeth "Dellie" Blevins appeal from the

Harlan Circuit Court's order granting summary judgment in favor of Progressive

Direct Insurance Company ("Progressive") in their action alleging violations of the

Kentucky Unfair Claims Settlement Practices Act ("UCSPA"), KRS[1] 304.12-230, and common-law bad faith. The Blevinses advanced three theories of recovery. First, they claimed Progressive conditioned payment of policy limits to Dellie on her husband, Lewis, signing a release that would also extinguish his own bodily-injury claims, even though no offer had yet been made to him. Second, they asserted that Progressive acted unreasonably by delaying any offer to settle Lewis's bodily-injury claim until well after suit was filed. Third, they pursued an assigned claim from Progressive's insured, Ashley Middleton, contending that Progressive's handling of the claims exposed her to litigation and the risk of an excess judgment.

Upon review of the record and applicable law, we conclude that summary judgment was properly granted. The undisputed evidence shows that Progressive promptly offered its per-person liability limits to settle Dellie's claim, clarified the scope of the proposed release when an ambiguity arose, and later offered the same limit to Lewis within weeks of receiving his medical documentation. The record contains no evidence that Progressive acted with harassment, deception, or reckless disregard of the Blevinses' rights, nor that its conduct toward its insured was in bad faith. Because the Blevinses failed to present proof of conduct rising to the level of "outrageous" or "reckless" behavior

---

[1] Kentucky Revised Statutes.

required to sustain a claim under *Wittmer v. Jones*, 864 S.W.2d 885 (Ky. 1993), we affirm.

## I. BACKGROUND

On February 25, 2019, the Blevinses were involved in a motor vehicle accident with another vehicle driven by Ashley Middleton. Progressive had issued an auto insurance policy to Johnny Middleton, Ashley's father, that covered the vehicle driven by Ashley, with bodily-injury liability coverage limits of $25,000 per person and $50,000 per accident.

The Blevinses engaged Adam P. Collins of Collins, Collins & Conley P.S.C. to represent them in relation to the accident. On March 29, 2019, Attorney Collins wrote Progressive a letter advising it that he would be representing the Blevinses. Around this same time, "Keanna" from Attorney Collins's office also telephoned Progressive with respect to the Blevinses' claim.[2] According to Progressive, it had not been notified of the claim prior to this contact by Attorney Collins's office. The letter requested that Progressive: (1) pay for the total loss of the Blevinses' vehicle and loss of use of said vehicle; and (2) provide Attorney

---

[2] While it appears undisputed that "Keanna" was employed in some capacity at Collins's firm, it is unclear whether she is an attorney, a paralegal, an administrative assistant, or worked there in some other capacity. Additionally, we have been unable to determine her surname from the record before us.

Collins with a copy of the Declarations page for the Progressive policy covering the vehicle Ashley was operating at the time of her accident with the Blevinses.

Progressive assigned the Blevinses' bodily-injury claims to one of its claims adjusters, Nathan Jones. Upon receiving Attorney Collins's letter, Adjuster Jones acknowledged the representation and requested that Attorney Collins provide documentation to substantiate the Blevinses' bodily-injury claims. On April 17, 2019, Progressive received a billing summary from Air Evac documenting that the cost of airlifting Dellie from the accident scene to a hospital for treatment was $69,956.07.

On April 25, 2019, despite having received no other medical documentation or a settlement demand, Adjuster Jones telephoned Attorney Collins and extended an offer to pay the $25,000 per-person liability limit in exchange for a full and final release of all claims by, or arising out of, Dellie's injuries, with indemnity for any derivative claims. During the call, Attorney Collins stated that he was uncertain whether the Blevinses carried underinsured-motorist coverage, was preparing a demand on behalf of Lewis, and requested that Adjuster Jones send a written offer letter with the proposed release. This offer and the release language accompanying it later became the basis for the Blevinses' first bad-faith theory: that Progressive conditioned Dellie's settlement on Lewis's release of his own claims.

That same day, Adjuster Jones emailed Attorney Collins a copy of the proposed release. The accompanying email stated that the release was to be executed in exchange for payment of the $25,000 per-person policy limit to Dellie and that it was intended to include any loss-of-consortium claims. The text of the release itself, however, was ambiguous. It did not clearly specify that it covered only Lewis's derivative loss-of-consortium claim arising from Dellie's injuries, and not any independent bodily-injury claim of his own. After reviewing the proposed release, Attorney Collins wrote to Adjuster Jones objecting to any release of Lewis's bodily-injury claims, refusing to provide indemnity, rejecting Progressive's offer, and inquiring whether Ashley had any additional liability coverage available.

On May 6 and May 9, 2019, Adjuster Jones left voicemail messages for Attorney Collins seeking to clarify the confusion regarding the proposed release language. On May 13, 2019, Adjuster Jones spoke with Keanna from Attorney Collins's office, and attempted to discuss the matter further. She asked that Adjuster Jones instead send a written letter outlining what he wished to convey to Attorney Collins. That same day, Adjuster Jones provided the requested letter, which stated:

> Thank you for your letter of April 29, 2019 regarding
> Dellie Blevins and Lewis Blevins. Regarding your letter,
> the proposed release that was sent for the $25,000 offer
> was for Mrs. Dellie Blevins' bodily injury claim. It is my

-5-

understanding that Dellie Blevins and Lewis Blevins are married. This offer was only for her claim and the potential loss of consortium claim that Mr. Lewis Blevins would have as her spouse. Mr. Lewis Blevins' bodily injury claim is still open and active awaiting the demand from your office to evaluate his claim, as we discussed when I extended the offer for Ms. Blevins' claim.

This letter will serve to reiterate that the offer for Mrs. Dellie Blevins' claim was for full and final release of all claims and demands with indemnity. If you wish to propose specific changes to the release that I sent or another release for consideration, please submit and I will have it reviewed to see if we can come to an agreement on the terms of the release.

Finally, I have tried to speak with Ashley Middleton to determine if she had additional coverage available to her at the time of this accident but have not been able to confirm if there is any coverage or not.

Please contact me regarding this letter so that we may discuss further.

(Record at 616.)

When Adjuster Jones received no response from Attorney Collins, he sent follow-up emails on June 12 and August 7, 2019. Still, he heard nothing until September 3, 2019, when Attorney Collins faxed a letter advising that he had already filed suit against Ashley in June 2019 on the Blevinses' behalf.

Progressive retained attorney Marcia Wireman to represent its insured, Ashley Middleton. Attorney Wireman reiterated to Attorney Collins that Progressive remained willing to settle Dellie's claim for the $25,000 per-person

-6-

policy limit and requested that he submit a demand and supporting documentation for Lewis's separate bodily-injury claim. Despite these requests, no demand or documentation was provided at that time.

In mid-2020, after several months of litigation activity in the underlying tort action, Attorney Wireman informed Progressive that she had finally received medical records from Whitesburg ARH documenting Lewis's treatment and injuries. Based on that information, and without having received a formal settlement demand, Progressive authorized Attorney Wireman on August 4, 2020, to tender the remaining $25,000 per-person liability limit to settle Lewis's bodily-injury claim. Attorney Collins acknowledged receipt of the offer later that month and indicated they were considering it.

Following Progressive's August 4, 2020 offer to settle Lewis's claim, Attorney Collins sent several letters to Attorney Wireman reiterating his view that Progressive's handling of the 2019 offer to Dellie had been improper. In an August 24, 2020 letter, Attorney Collins asserted that Adjuster Jones had refused his efforts to settle within policy limits and had insisted that Dellie agree to indemnify "the world at large" and that Lewis also sign the release, thereby relinquishing his own bodily-injury claim. Attorney Collins maintained that this position forced the filing of the tort action and demanded $250,000 to resolve Dellie's case. The same letter acknowledged Progressive's recent offer to Lewis

and stated that his counsel was considering it. Over the next several weeks, Attorney Collins sent additional correspondence in late August and September 2020 restating his criticisms of Adjuster Jones's conduct and confirming receipt of the policy-limit offer on Lewis's claim. The Blevinses subsequently filed their Third Amended Complaint on August 19, 2021, asserting that Progressive acted in bad faith by conditioning Dellie's settlement on Lewis's release and by unreasonably delaying any offer on Lewis's claim.

After the Third Amended Complaint was filed, Progressive produced its claim file and Adjuster Jones's affidavit in support of its motion for summary judgment. The affidavit authenticated the contemporaneous claim notes and correspondence documenting Progressive's handling of both claims. Progressive argued that the undisputed record showed it had promptly tendered policy limits to settle Dellie's claim, clarified the release language when the ambiguity was raised, and later offered Lewis the same limits shortly after receiving his medical records. Attorney Collins opposed the motion, asserting that summary judgment was premature because no depositions had yet been taken and additional discovery was needed concerning Adjuster Jones's decision-making and Progressive's internal claims-handling procedures. Progressive moved for a protective order to prevent depositions pending resolution of its dispositive motion.

A hearing on the parties' motions was held on March 28, 2024. Attorney Collins urged the court to deny summary judgment and permit depositions of Adjuster Jones and other Progressive personnel, arguing that discovery might reveal evidence of bad faith. Progressive maintained that its motion could be decided as a matter of law based on the undisputed written record. The circuit court took the motions under submission and thereafter entered an order granting Progressive's motion for summary judgment. In its written order, the court concluded that Progressive's conduct "does not come near the level of outrageous or reckless conduct required to sustain a bad faith settlement action." The court further held that the indemnity provision in the proposed release was proper under *Coots v. Allstate Insurance Co.*, 853 S.W.2d 895, 901 (Ky. 1993), which recognized an insurer's right to condition a policy-limits payment on execution of a full release and indemnification of the insured.

This appeal followed.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[3] 56.03.

---

[3] Kentucky Rules of Civil Procedure.

The movant bears the initial burden of demonstrating that there is no genuine issue of material fact in dispute.

The party opposing the motion then has the burden to present, "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Serv. Ctr, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991); *Watson v. Landmark Urology, P.S.C.*, 642 S.W.3d 660, 666 (Ky. 2022). "A party responding to a properly supported summary judgment motion cannot merely rest on the allegations in its pleadings." *Versailles Farm Home and Garden, LLC v. Haynes*, 647 S.W.3d 205, 209 (Ky. 2022) (citing *Continental Cas. Co. v. Belknap Hardware & Mfg. Co.*, 281 S.W.2d 914, 916 (Ky. 1955)). "[S]peculation and supposition are insufficient to justify a submission of a case to the jury, and that the question should be taken from the jury when the evidence is so unsatisfactory as to require a resort to surmise and speculation." *O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky. 2006) (quoting *Chesapeake & Ohio Ry. Co. v. Yates*, 239 S.W.2d 953, 955 (Ky. 1951)).

### III. ANALYSIS

The Blevinses argue that the circuit court erred in granting summary judgment because genuine issues of material fact exist concerning Progressive's alleged bad faith. They contend Adjuster Jones, acting on Progressive's behalf, acted in bad faith in two respects. First, they maintain that Progressive improperly

conditioned payment of the $25,000 per-person policy limit to Dellie on Lewis's agreement to release his own bodily-injury claims, even though no offer had yet been made to him. According to the Blevinses, this conduct was inconsistent with Progressive's duty under the UCSPA to attempt in good faith to effectuate prompt and equitable settlements of claims in which liability is reasonably clear. Second, they assert that Progressive unreasonably delayed any offer on Lewis's separate bodily-injury claim until well after litigation was filed, despite knowing that both claimants had been injured in the same accident. The Blevinses further argue that summary judgment was premature because the circuit court ruled before permitting them to depose Adjuster Jones or obtain expert testimony on Progressive's claims-handling practices.

Progressive responds that summary judgment was properly granted because the undisputed evidence demonstrates that it acted reasonably at all times. It emphasizes that it promptly tendered its per-person policy limit to settle Dellie's claim within one month of receiving her first medical bill, clarified the release language when Attorney Collins objected, and subsequently extended an identical policy-limit offer to Lewis within weeks of receiving his medical documentation. Progressive asserts that no evidence supports an inference of harassment, deception, or reckless disregard of the Blevinses' rights as required under *Wittmer*, *supra*. It further argues that the indemnity provision in the proposed release was

consistent with *Coots*, *supra*, and that the circuit court correctly found its conduct did not approach the level of outrageousness necessary to sustain a bad-faith claim. Finally, Progressive contends that additional discovery would not have changed the outcome because the material facts are fully established in the written record.

Kentucky recognizes a private cause of action for violation of the UCSPA, KRS 304.12-230, both by an insured and by a third-party claimant against the insurer of a tortfeasor. *Estate of Bramble v. Greenwich Ins. Co.*, 671 S.W.3d 347, 351 (Ky. 2023). The same standards govern both types of claims. To prevail on a claim of statutory or common-law bad faith, a plaintiff must establish three elements: (1) the insurer was obligated to pay the claim under the terms of the policy; (2) the insurer lacked a reasonable basis in law or fact for denying or delaying payment; and (3) the insurer knew there was no reasonable basis for denying or delaying payment, or acted with reckless disregard for whether such a basis existed. *Wittmer*, 864 S.W.2d at 890.

The UCSPA requires that an insurance company "deal in good faith with a claimant in determining whether the company is contractually obligated to pay the claimant." *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 584 (Ky. 2021). This duty extends both to an insurer's own insured and to third-party claimants. *Id.* An insurer is entitled to challenge a claim and litigate disputed issues where the claim is "fairly debatable" on the law or facts. *Belt v. Cincinnati*

-12-

*Ins. Co.*, 664 S.W.3d 524, 535 (Ky. 2022). Liability arises only when the insurer's conduct evidences "conscious wrongdoing, reckless indifference, or an unjustified gamble at the stake of the insured." *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997), *modified on other grounds by Hollaway v. Direct Gen. Ins. Co. of Miss.*, 497 S.W.3d 733 (Ky. 2016).

Kentucky courts have long recognized that the UCSPA applies to both pre- and post-litigation conduct. *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 516-17 (Ky. 2006). Evidence of an insurer's behavior throughout litigation may be considered in determining whether it engaged in bad faith, though post-filing actions cannot, by themselves, create a separate cause of action. *Id.* Thus, the question remains whether the insurer's overall course of conduct—including any delay or manner of settlement—was so outrageous, reckless, or indifferent to the rights of the claimant as to constitute bad faith.

However, mere delay in payment, standing alone, does not rise to that level. A plaintiff must show an affirmative act of harassment, deception, or extortionate intent. *Nichols v. Zurich Am. Ins. Co.*, 630 S.W.3d 683, 689 (Ky. 2021); *Messer v. Universal Underwriters Ins. Co.*, 598 S.W.3d 578, 592 (Ky. App. 2019); *Breedlove v. State Farm Fire & Cas. Co.*, 690 S.W.3d 904, 917 (Ky. App. 2024).

The record reflects that the inclusion of language releasing Lewis's bodily-injury claims in the proposed settlement release was the product of a misunderstanding, not evidence of bad faith. When Attorney Collins objected to the language, Adjuster Jones promptly sought to clarify the matter by leaving multiple messages and ultimately sending a written letter explaining that the offer was intended to resolve only Dellie's bodily-injury claim and Lewis's derivative loss-of-consortium claim. Attorney Collins did not respond or propose alternative language, and no further communication occurred before suit was filed. There was nothing improper about Progressive's inclusion of the loss-of-consortium claim within the scope of Dellie's settlement, as that claim arose directly from her injuries and was derivative of the very claim being resolved. This record shows, at most, an initial ambiguity that Progressive attempted to correct, not harassment, deception, or reckless disregard of the Blevinses' rights.

The same is true of the alleged delay in resolving Lewis's separate claim. Progressive was entitled to obtain information concerning the extent of Lewis's injuries and medical expenses before determining whether those damages met the $25,000 per-person policy limit. The insurer had a right—and indeed a duty—to conduct a reasonable investigation before extending payment. *Mosley*, 626 S.W.3d at 584; *Belt*, 664 S.W.3d at 535. Progressive did not deny the claim on liability grounds; it merely sought documentation necessary to evaluate

-14-

damages.  Once that information was received in mid-2020, Progressive promptly

authorized Attorney Wireman to tender the policy limits to Lewis.  The delay in

settlement resulted primarily from Attorney Collins's failure to timely provide the

requested medical documentation to either Adjuster Jones or Attorney Wireman

after suit was filed.  As a matter of law, such a delay—absent any evidence of

harassment, deception, or extortionate intent—does not rise to the level of

outrageous conduct required to support a claim of bad faith.  *Breedlove*, 690

S.W.3d at 917.

The Blevinses also contend that the circuit court prematurely granted

summary judgment before they were able to depose Adjuster Jones or obtain

expert testimony regarding Progressive's claims-handling practices.  We agree that

summary judgment should not be granted unless "a party has been given ample

opportunity to complete discovery."  *Pendleton Bros. Vending, Inc. v.*

*Commonwealth, Fin. & Admin. Cabinet*, 758 S.W.2d 24, 29 (Ky. 1988) (citing

*Hartford Ins. Grp. v. Citizens Fid. Bank & Tr. Co.*, 579 S.W.2d 628 (Ky. App.

1979)).

However, we do not believe the circuit court acted prematurely here.

The record before the court was extensive and included the complete claim file,

correspondence, and affidavit of Adjuster Jones, all of which fully documented

Progressive's handling of both claims.  The Blevinses identified no specific facts

likely to be uncovered through additional discovery that would have created a genuine issue of material fact regarding bad faith. *Benton v. Boyd & Boyd, PLLC*, 387 S.W.3d 341, 343-44 (Ky. App. 2012). Speculation or the mere hope that further discovery might uncover such proof is insufficient to defeat summary judgment. *Wright v. Miller*, 629 S.W.3d 813, 819 (Ky. App. 2021).

## IV. CONCLUSION

For the reasons set forth above, the order of the Harlan Circuit Court granting summary judgment in favor of Progressive Direct Insurance Company is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Adam P. Collins
Hindman, Kentucky

BRIEF FOR APPELLEE
PROGRESSIVE DIRECT
INSURANCE CO.:

Robert L. Steinmetz
Louisville, Kentucky